H. ROSENBLUM, INC., A NEW JERSEY CORPORATION, SUMMIT GIFT GALLERIES, INC., A NEW JERSEY CORPORATION (FORMERLY KNOWN AS SUMMIT PROMOTIONS, INC.), BARRY ROSENBLUM AND HARRY ROSENBLUM, PLAINTIFFS–APPELLANTS–CROSS–RESPONDENTS, v. JACK F. ADLER, ET AL., INDIVIDUALLY AND AS PARTNERS TRADING AS TOUCHE ROSS & CO., SEVERALLY AND IN THE ALTERNATIVE, DEFENDANTS–RESPONDENTS–CROSS–APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued September 22, 1987—Decided December 2, 1987.

Before Judges ANTELL, R.S. COHEN and LANDAU.

*Bradley R. Brewer* argued the cause for appellants-cross-respondents (*Cummins, Dunn & Pashman,* attorneys; *Bradley R. Brewer, James K.M. Leeper and Donald Horowitz,* of counsel; *Louis Pashman,* on the brief).

*Leon P. Gold* argued the cause for respondents-cross-appellants (*Schneider, Balt & Ciancia,* attorneys; *Leon P. Gold, Mark E. Davidson, Merrye Piltz Schindler, and Harold Langsam,* of counsel; *Jacob Schneider,* on the brief).

The opinion of the court was delivered by

LANDAU, J.A.D.

This case comes to us on leave granted, following cross-appeals by the litigants from an order entered by the trial judge at the conclusion of a lengthy collateral proceeding. The underlying law suit was initiated in 1974 by H. Rosenblum, Inc. and Summit Gift Galleries, Inc., New Jersey corporations, and their principals, against Touche Ross & Co., and individual partners therein, with counts of negligence and fraud arising out of 1971 and 1972 audits allegedly relied on by plaintiffs in selling their business in exchange for stock of Giant Stores Corporation, a publicly traded company. The stock turned out to be worthless. Touche Ross has since been censured by the Securities and Exchange Commission for the 1972 audit.

A detailed discussion of the underlying suit and the theory of its negligence count is contained in *Rosenblum v. Adler,* 93 *N.J.* 324 (1983).

The procedural history of this case, amassed with judicial toleration and even encouragement, merits a place on the shelf next to *Bleak House* and *Alice in Wonderland.* For three years, the substantive action, arising out of conduct alleged to have occurred in 1971 and 1972, has remained on a judicial sidetrack. The energies of counsel and the courts have been

devoted to considering whether plaintiffs' counsel fees are subject to *R.* 1:21–7, and to cross motions to disqualify lawyers.

The December 5, 1986 order under cross-appeal denied the motion by defendants for an evidentiary hearing and for disclosure regarding plaintiffs' counsel fee arrangements, for disqualification of counsel and revocation of *pro hac vice* admissions of New York counsel, and for a contempt proceeding. Although defendants' motion for adjournment of trial pending our resolution of this appeal was denied, the case has not been tried.

Plaintiffs' cross-motion for disciplinary and remedial sanctions against counsel for Touche Ross, Inc. and for revocation of *pro hac vice* admission of their New York counsel was denied.

Finally, the December 5 order concluded, inconsistently with the trial judge's earlier oral findings, that there was a contingent fee arrangement between plaintiffs and their [several] counsel. That order also provided that the:

> ... contingent fee arrangement in this case shall be governed by the limitations and maximums provided in *R.* 1:21–7 as of the date plaintiffs' counsel accepted the commission in this case, and plaintiffs shall not pay, and plaintiffs' counsel shall not receive from plaintiffs, any payments greater than the maximum permitted by *R.* 1:21–7 should there be any recovery in this action. Plaintiffs and their counsel shall be governed by the above contingent fee arrangement and shall not enter into any other fee arrangement herein.

With the exception of the question of contingent fee and the trial judge's interpretation of *R.* 1:21–7, the order of the trial judge reflects the exercise of discretion in which we perceive no abuse and therefore affirm substantially for the reasons expressed by the trial judge, concluding as we do that the issues of law raised by each party in connection with the order are clearly without merit. *R.* 2:11–3(e)(1)(E). Moreover, we disagree that the trial judge breached any judicial duty to disqualify counsel.

The lengthy briefs, appendices and imaginative constitutional and substantive arguments presented to us in these interlocu-

tory appeals have all but obscured the dominant question of applicability of *R.* 1:21–7 to this case. We have considered and reject defendant's argument that an order entered by us in 1984 either impliedly determined that *R.* 1:21–7 is applicable or that the issue cannot be resolved prior to the conclusion of this case. Indeed, our grant of leave to appeal was for the purpose of resolving this issue. If *R.* 1:21–7 is inapplicable to this case, there would be no logical basis for the court to adjudicate, at the instance of defendants, a non-dispute [1] between plaintiffs and their attorneys as to the nature or content of their own fee agreement.

We hold that *R.* 1:21–7 is not applicable to the present matter.

*R.* 1:21–7 now provides in pertinent part:

(a) As used in this rule the term 'contingent fee arrangement' means an agreement for legal services of an attorney or attorneys, including any associated or forwarding counsel, under which compensation, contingent in whole or in part upon the successful accomplishment or disposition of the subject matter of the agreement, is to be in an amount which either is fixed or is to be determined under a formula.

(b) An attorney shall not enter into a contingent fee arrangement without first having advised the client of the right and afforded the client an opportuni-

---

[1] Plaintiffs' certifications give no indication of any present fee contests with their attorneys. Of course, all attorney fees are always subject to judicial supervision respecting reasonableness. See *R.P.C.* 1.5, *R.* 1:14, *R.* 1:20 and *R.* 1:20A. Absent extraordinary circumstances not here present, however, we would expect that such fee grievances be raised by the aggrieved client, not by his adversary.

Although defendants have been permitted to raise these issues, ostensibly to vindicate various public interests, it would be naive to ignore either the tactical significance of compelling plaintiffs to replace their attorneys in a 13 year old, heavily contested, complex and intensely discovered matter on the eve of a projected six month trial or the impact of imposing severe advance restrictions on their counsel fees at this stage of an inherently costly economic injury case. We observe that the issue of encouragement (if not coercion) of settlement in this important case was raised and considered during the course of the present side dispute. Commendable as the goal of settlement of disputes may be, attainment of that goal must not be viewed as more than a means to facilitate the administration of justice, and never as an acceptable alternative.

ty to retain him under an arrangement whereby he would be compensated on the basis of the reasonable value of his services.

(c) In any matter where a client's claim for damages is based upon the alleged tortious conduct of another, including products liability claims, and the client is not a subrogee, an attorney shall not contract for, charge, or collect a contingent fee in excess of the following limits:

(1) 33⅓% on the first $250,000 recovered;

(2) 25% on the next $250,000 recovered;

(3) 20% on the next $500,000 recovered; and

(4) on all amounts recovered in excess of the above by application for reasonable fee in accordance with the provisions of paragraph (f) hereof; ...

## Subparagraph f of *R.* 1:21–7 provides:

If at the conclusion of a matter an attorney considers the fee permitted by paragraph (c) to be inadequate, an application on written notice to the client may be made to the Assignment Judge for the hearing and determining of a reasonable fee in light of all the circumstances. A copy of any such application and of all papers filed in support of or in opposition thereto, together with a copy of the court order fixing the fee shall be filed with the Administrative Office of the Courts. This rule shall not preclude the exercise of a client's existing right to a court review of the reasonableness of an attorney's fee.

Although there have been modifications to this Rule since the retention of certain counsel, they are not material in light of the conclusion we reach herein.

Essentially, defendants contend, and the trial judge has held, that the plaintiffs claim is one for "alleged tortious conduct of another" which must be governed by *R.* 1:21–7. Plaintiffs say that the rule has been interpreted by the Administrative Director of the Courts in a Notice to the Bar issued in 1972 (95 *N.J.L.J.* p. 341 (1972)) which, in pertinent part, provides that it is applicable to contingent fee arrangements entered into prior to the effective date of the rule if not completely performed as of that date, and that the rule does not "apply to 'business torts' such as fraud or conspiracy to interfere with contractual relationships" but includes "all typical negligence cases, such as auto accidents product liability and 'slip and fall.'"

The interpretative Notice issued by the Administrative Director of the Courts has been adopted by the Supreme Court. In *American Trial Lawyers Association v. N.J. Supreme Court,* 126 *N.J.Super.* 577 (App.Div.1974), aff'd 66 *N.J.* 258

(1974) we expressly recognized the effect of that Notice. Thereafter, in its affirmance, the Supreme Court adopted *in toto* Judge Kolovsky's opinion and necessarily, therefore, the interpretation of *R.* 1:21–7 contained in the Administrative Director's 1972 Notice. See *American Trial Lawyers v. N.J. Supreme Court,* 66 *N.J.* 258, 261 (1974).

Thus, we must consider whether plaintiffs' action is one of the "typical negligence cases, such as auto accidents, product liability and 'slip and fall'" to which *R.* 1:21–7 applies, or whether it falls within the "business torts" exception of the 1972 Notice in which fraud and conspiracy to interfere with contractual relationships were given as examples of the excepted torts.

Defendants have ably argued that the present dispute basically sounds in accountants' malpractice, as recently here expanded by the Supreme Court. See *Rosenblum v. Adler,* 93 *N.J.* at 333.

Our interpretative efforts, however, must focus primarily on the reason for the distinction made in the 1972 Notice between typical negligence cases and business tort cases. This distinction, we believe, was not based on the precise nature of the tortious act, but on the probable status, sophistication, and vulnerability of the victim of the tort when entering into fee arrangements with an attorney. So, for example, *R.* 1:21–7 does not protect a subrogee, although the nature of the tort is identical with that directly asserted by the victim.

Although the rule does not expressly exclude purely economic loss not arising out of bodily injury from coverage of the rule, this is one significant factor to be considered in weighing whether a "business tort" is asserted, for *R.* 1:21–7 purposes. Here, we note that the Supreme Court referred to the newly identified tort which it recognized in the following words,

When the independent auditor furnishes an opinion with no limitation in the certificate as to whom the company may disseminate the financial statements, he has a duty to all those whom that auditor should reasonably foresee as recipients from the company of the statements for its proper *business pur-*

*poses,* provided that the recipients rely on the statements pursuant to those *business purposes.* The principle that we have adopted applies by its terms only to those foreseeable users who receive the audited statements from the *business entity* for a proper *business purpose* to influence a *business decision* of the user, the audit having been made for that *business entity.*

*Rosenblum v. Adler,* 93 *N.J.* at 352. (Emphasis supplied)

Although this precise business tort may not have been specifically contemplated at the time of the 1972 Notice, it is to us obvious that the kind of litigant which *R.* 1:21-7 was designed to protect is not one who was sufficiently sophisticated to review and rely upon a certified audit of financial statements in the course of reaching a decision about sale of a business corporation. For purposes of *R.* 1:21-7, the pleadings herein assert a "business tort."

Accordingly, we reverse so much of the December 6, 1986 order as would apply *R.* 1:21-7 to fee arrangements between plaintiffs and their attorneys. The balance of the order is affirmed. The case should proceed promptly to trial.