267 N.J. Super. 546 (1993)
632 A.2d 291
NYDIA SILVA, PLAINTIFF-APPELLANT AND CROSS-RESPONDENT,
v.
AUTOS OF AMBOY, INC., A CORPORATION OF THE STATE OF NEW JERSEY, INDIVIDUALLY AND T/A CENTURY CHEVROLET, CENTURY CHEVROLET, CARL OLIVEIRA AND AL BEYROUTY, INDIVIDUALLY AND AS OFFICERS AND EMPLOYEES OF CENTURY CHEVROLET, DEFENDANTS-RESPONDENTS AND CROSS-APPELLANTS, AND MIDLANTIC NATIONAL BANK, A BANKING ORGANIZATION DOING BUSINESS IN NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Submitted September 15, 1993.
Decided October 25, 1993.
*551 Before Judges KING, HAVEY and RODRIGUEZ.
Mark R. Silber, attorney for appellant/cross-respondent (Mr. Silber and Michael I. Josephs on the brief).
Greenbaum, Rowe, Smith, Ravin & Davis, attorneys for respondents/cross-appellants (William D. Grand, of counsel; Drew M. Hurley and Steven A. Lang on the brief).
The opinion of the court was delivered by HAVEY, J.A.D.
In this action instituted under the New Jersey Consumer Fraud Act (Act), N.J.S.A. 56:8-1 to -60, the trial judge divided plaintiff's adjusted counsel fee demand by the number of counts in plaintiff's complaint and awarded a fee in the amount of $1,232.50. We reverse. Such a mechanical approach is contrary to the spirit and underlying remedial purpose of the Act. When separate claims in a complaint share a common core of facts with the consumer fraud claim, or are based on related legal theories, the trial judge, when awarding fees, must focus on the significance of the overall relief obtained by plaintiff in relation to the hours reasonably expended. We exercise our original jurisdiction, Rule 2:10-5, and enter an award of $4,500, plus costs of suit.
Plaintiff filed a seven-count complaint against defendants Autos of Amboy, Inc., Century Chevrolet (Century), Carl Oliveira, Al Beyrouty and the Midlantic National Bank (Midlantic). Her claims arose as a result of her purchase of a 1989 Chevrolet Blazer from Century's showroom in South Amboy. In count one, plaintiff *552 alleges that defendants committed consumer fraud by: concealing the terms of a rebate and a federal price label; selling the Blazer for more than the labeled price; engaging in "bait and switch"; and concealing facts relating to and overcharging for life and disability insurance. In the remaining counts she asserts common-law fraud, technical violations of the Act and its attendant regulations, and violations of federal labeling statutes. In counts six and seven, plaintiff advances her claims against Midlantic, the assignee of her Retail Installment Sales Contract. The allegations in all seven counts relate to the sale of the Blazer to plaintiff. Plaintiff sought compensatory, punitive and treble damages, as well as costs, counsel fees and interest.
Prior to trial all of plaintiff's claims against all defendants were dismissed except for those based on fraud in the execution and alteration of the sales documents. Midlantic successfully moved for summary judgment dismissing the complaint against it, except for its potential vicarious liability based on Century's purported fraudulent conduct. Plaintiff voluntarily dismissed her punitive damage claim against all defendants.
At trial, plaintiff testified that a Century salesperson agreed to sell the Blazer to her for $17,000. When Beyrouty, a salesman, wrote $17,000 on the written agreement, she signed it. However, she admitted that no one from the dealership signed the agreement with the $17,000 purchase price. When plaintiff later returned to the showroom after visiting her bank, she met with a Century salesman who advised her that the price of the Blazer was $19,000. Plaintiff signed the agreement with the $19,000 purchase price. She explained she did so when Oliveira, Century's sales manager, told her to "sign a whole bunch of papers ... all folded down." Plaintiff also testified that no one from the dealership explained to her that there was an additional $350 charge for undercoating, rust-proofing, paint sealant and fabric guard.
The jury found that Century violated the Act by overcharging plaintiff $350 for "equipment and services plus sales tax." However, it rejected her claim of a $2,000 overpayment on the contract *553 price. Pursuant to N.J.S.A. 56:8-19, the trial judge trebled the damage award and entered judgment in plaintiff's favor in the amount of $1,113.
After entry of judgment, plaintiff moved for counsel fees and costs, submitting her counsel's certification of services requesting $16,968 in fees (70.7 hours multiplied by a rate of $240 per hour), and $729.23 in costs. The trial judge first reduced the total hours expended, 70.7, by subtracting 21.4 hours which plaintiff's counsel had spent awaiting trial calls. He did so because plaintiff did not appear at the first trial call. The judge then reduced counsel's hourly rate from $240 to $175, noting that the issues "were not complicated." Finally, he determined that counsel was entitled to compensation only for one-seventh of the remaining 49.3 hours. Relying on 49 Prospect Street v. Sheva Gardens, 227 N.J. Super. 449, 547 A.2d 1134 (App.Div. 1988), he concluded:
[T]he only equitable way to determine a pro rata proportion of attorney fees spent on that issue is by dividing it among the counts of the complaint. This was a seven-count complaint. One count was justified by a verdict of the jury. And therefore what I'm doing is taking one-seventh of the requested legal fee as adjusted, being mindful of the fact that I have adjusted it down to $175 per hour, at 49.3 hours. I've divided that by seven. And that comes to $1,232.50.
The trial judge thereupon awarded counsel fees in the amount of $1,232.50, plus costs of $729.23.
Century also sought counsel fees and costs incurred as a result of plaintiff's failure to appear at the first trial call. The trial judge granted fees in the amount of $1,906.87, but denied without comment Century's additional demand for fees incurred based on its counsel's appearance at subsequent trial calls, when plaintiff was present.
Plaintiff appeals from the order awarding her $1,232.50 in counsel fees, and Century cross-appeals the denial of its application for additional counsel fees incurred for appearances at subsequent trial calls.
N.J.S.A. 56:8-19 provides that the court "shall ... award threefold the damages sustained by any person" and "shall also award reasonable attorneys' fees ... and reasonable costs of suit." *554 Facially, the statute mandates the award of reasonable attorneys' fees, but does not provide guidance as to the manner by which such fees shall be computed when consumer fraud is alleged in a multi-count complaint containing nonconsumer fraud claims. In our view, N.J.S.A. 56:8-19 must be read consonant with the remedial purpose of the Act. The fee provision provides "an incentive for an attorney to take a case and ... encourag[es] private parties to bring their own actions instead of turning to the Attorney General." Skeer v. EMK Motors, Inc., 187 N.J. Super. 465, 472, 455 A.2d 508 (App.Div. 1982). Hence, the statute ensures that plaintiffs with bona fide claims will be able to retain counsel. Coleman v. Fiore Bros., Inc., 113 N.J. 594, 598, 552 A.2d 141 (1989); Chattin v. Cape May Greene, Inc., 243 N.J. Super. 590, 610, 581 A.2d 91 (App.Div. 1990) aff'd o.b., 124 N.J. 520, 591 A.2d 943 (1991); see also Wisser v. Kaufman Carpet Co., Inc., 188 N.J. Super. 574, 579, 458 A.2d 119 (App.Div. 1983) (The Act "has the salutary purpose of promoting representation and therefore court access for consumer claims involving a minor loss to the individual plaintiff but a major gain to the community through ridding the marketplace of fraudulent and deceitful conduct."). Application of a mechanical rule awarding fees based on the number of counts in a complaint undercuts the salutary purpose of promoting independent representation, since it may discourage competent counsel from undertaking the prosecution of bona fide consumer fraud actions, or from including related, meritorious nonconsumer fraud counts in a complaint against a deceitful vendor.
It is true that, as the trial judge observed, we stated in 49 Prospect Street, 227 N.J. Super. at 470, 547 A.2d 1134, that when a complaint contains several counts other than those for consumer fraud, and counsels' efforts are "spread among several other claims upon which counsel were not entitled to attorneys' fees," this factor should be considered by the court in fixing counsel fees. Accord Chattin, 243 N.J. Super. at 614, 581 A.2d 91.
*555 However, in 49 Prospect Street, 227 N.J. Super. at 457, 547 A.2d 1134, plaintiffs had filed an eleven-count complaint which included not only counts alleging a violation of the Act, but claims that defendant-landlord had violated the Anti-Eviction Act, N.J.S.A. 2A:18-61.1; made negligent misrepresentations; breached the warranty of habitability; intentionally inflicted emotional distress; and violated the city's rent leveling ordinance. Thus, at least some of the counts were seemingly independent of plaintiffs-tenants' claim of consumer fraud. Indeed, the court, in concluding that plaintiffs' counsel may not be entitled to fees for the nonconsumer fraud claims, cited Simon v. Solomon, 385 Mass. 91, 431 N.E.2d 556, 570 (1982), where the Supreme Judicial Court of Massachusetts held that "[a] statutory fee award should not cover effort expended on independent claims that happen to be joined with statutory claims in a single proceeding." 227 N.J. Super. at 470, 547 A.2d 1134 (emphasis added). We do not read 49 Prospect Street or Simon as a signal to trial courts to divide reasonable counsel fee demands by the number of claims when, as here, they are factually and legally interrelated.
The federal courts provide some guidance in resolving the issue. New Jersey courts have turned to federal cases interpreting the Civil Rights Attorney's Fee Awards Act of 1976, 42 U.S.C.A. § 1988 (§ 1988), in determining the amount of reasonable attorneys' fees under our Consumer Fraud Act. For example, our Supreme Court has noted that both § 1988 and our Consumer Fraud Act serve the dual purpose of attracting competent counsel and ensuring justice for all citizens. Coleman, 113 N.J. at 598, 552 A.2d 141; see also Chattin, 243 N.J. Super. at 610, 581 A.2d 91. The seminal decision of the United States Supreme Court defining the standards for computing reasonable counsel fees under § 1988 is Hensley v. Eckerhart, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Hensley expressly rejected "a mathematical approach comparing the total number of issues in the case with those actually prevailed upon" because "[s]uch a ratio provides little aid in determining what is a reasonable fee in light of *556 all the relevant factors." Id., at 435 n. 11, 103 S.Ct. at 1940, 76 L.Ed.2d at 52. Rather, the starting point is to determine the amount of hours reasonably expended on the litigation multiplied by a reasonable hourly rate, id., at 433, 103 S.Ct. at 1939, 76 L.Ed.2d at 50, the product being the so-called "lodestar." That analysis involves a shaving from the fee demand any excessive, redundant and otherwise unnecessary time expended during the litigation. Id., at 434, 103 S.Ct. at 1940, 76 L.Ed.2d at 51. Moreover, other factors may warrant a modification of the "lodestar," including the important factor of "the results obtained." Ibid.
In cases where plaintiff presents "distinctly different claims for relief" in one lawsuit, work on those unrelated claims cannot be deemed in pursuit of the ultimate result achieved. Id., at 434-35, 103 S.Ct. at 1940, 76 L.Ed.2d at 51. However, when the plaintiff's claims for relief "involve a common core of facts or will be based on related legal theories," such a suit cannot be viewed as a series of discrete claims. Id., at 435, 103 S.Ct. at 1940, 76 L.Ed.2d at 51. In such a case, the court must focus on the "significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." Id., at 435, 103 S.Ct. at 1940, 76 L.Ed.2d at 51-52. If a plaintiff achieves excellent results in a lawsuit, counsel fees should not be reduced on the ground that the plaintiff did not prevail on each claim advanced. Id., at 435, 103 S.Ct. at 1940, 76 L.Ed.2d at 52. "Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." Ibid.
By contrast, when a plaintiff achieves only partial or limited success, the lodestar may be excessive even if plaintiff's claims were interrelated and raised in good faith. Id., at 436, 103 S.Ct. at 1941, 76 L.Ed.2d at 52. Again, the Court emphasized that the critical factor is the degree of success obtained. However, no rule or formula exists for determining the amount of a reasonable *557 fee. Instead, a court can identify hours that should be eliminated, or simply reduce an award to accord with the limited success. Id., at 436-37, 103 S.Ct. at 1941, 76 L.Ed.2d at 52.[1]
Hensley's focus on "the results obtained" is consistent with our RPC 1.5(a)(4), which states that a trial court should consider "the amount involved and the results obtained" when devising a reasonable fee award. Accordingly, we held in Helton v. Prudential Prop. & Cas. Ins. Co., 205 N.J. Super. 196, 201, 500 A.2d 717 (App.Div. 1985), that the small amount of the underlying claim is an important factor in determining an appropriate fee. In Fagas v. Scott, 251 N.J. Super. 169, 193, 597 A.2d 571 (Law Div. 1991), the court interpreted RPC 1.5(a)(4) and Helton as creating a "principle of proportionality between the amount involved, the results obtained and the counsel fees allowable by a court." Hence, while there is no requirement that counsel fees be proportionate to damages, the amount of damages a plaintiff recovers is relevant to the amount of attorney's fees to be awarded. Chattin, 243 N.J. Super. at 616, 581 A.2d 91.
This limiting factor, however, must be applied with caution. In City of Riverside v. Rivera, 477 U.S. 561, 574, 106 S.Ct. 2686, 2694, 91 L.Ed.2d 466, 479 (1986), the Supreme Court reconfirmed the Hensley analysis and held that a counsel fee award under § 1988 is not per se unreasonable simply because it exceeds the amount of damages recovered by the plaintiff in the underlying lawsuit. The Court reasoned that the interests advanced in a civil rights case are broader than those implicated in an ordinary tort suit, and thus benefit the public as a whole. Ibid. Thus, regardless of the amount of damages awarded, an attorney's fee award deters future violators of civil right laws, and tends to attract competent *558 counsel to civil rights cases. Id., at 575-78, 106 S.Ct. at 2694, 91 L.Ed.2d at 480-82.
In the wake of Hensley and Rivera, the Seventh Circuit in Ustrak v. Fairman, 851 F.2d 983, 988 (7th Cir.1988), rejected the simplistic approach of dividing the plaintiff-inmate's counsel fee demand by six because the inmate prevailed on only one of six claims in a civil rights suit against a prison warden. The court held that such an approach effectively disregards the actual time spent litigating the successful claim. Instead, "[a] partially prevailing plaintiff should be compensated for the legal expenses he would have borne if his suit had been confined to the ground on which he prevailed plus related grounds within the meaning of Hensley." Ibid. This determination depends on how much time should have been expended on litigating the successful claim. Ibid. See also Wallace v. Mulholland, 957 F.2d 333, 339 (7th Cir.1992) (upholding attorneys' fee award even though plaintiffs did not prevail on all claims asserted in the suit because "[t]he claims on which the plaintiffs did not ultimately prevail were all related to the claims on which they did prevail," and hence "the plaintiffs won their case"); accord Mary Beth G. v. City of Chicago, 723 F.2d 1263, 1278-81 (7th Cir.1983); but see Bethune Plaza, Inc. v. Lumpkin, 755 F. Supp. 223 (N.D.Ill. 1991) (because plaintiff's suit was two-thirds successful, the court reduced plaintiff's fee by a corresponding percentage).
Our Supreme Court has embraced the Hensley approach in the context of § 1988 claims asserted in state court. See Singer v. State, 95 N.J. 487, 500-01, 472 A.2d 138 cert. denied, 469 U.S. 832, 105 S.Ct. 121, 83 L.Ed.2d 64 (1984). We are therefore entirely satisfied that the sound and fundamentally fair Hensley calculus should as well apply to consumer fraud claims prosecuted under the Act.
We accordingly reverse the $1,232.50 award. We, of course, could remand to the trial court for new findings, applying the Hensley analysis. However, in the interest of judicial economy we *559 undertake to exercise our original jurisdiction for the purpose of achieving a final determination of the matter. R. 2:10-5.
In computing the "lodestar," we are mindful, as was the trial judge, that at least 10.5 hours were unnecessarily spent by plaintiff's counsel because plaintiff failed to appear at the initial trial call. The total hours expended, 70.7, must therefore be reduced by 10.5 to 60.2. We also find no abuse of discretion in reducing the rate charged by plaintiff's counsel from $240 to $175 per hour. See Singer, 95 N.J. at 501-02, 472 A.2d 138. "An award that applies rates charged by attorneys of ordinary ability, skill and experience should be sufficient to satisfy the primary objective" of § 1988; namely, "to ensure that competent counsel will be available to all persons with bona fide civil rights claims." Id. at 501, 472 A.2d 138. The same reasoning should apply to bona fide consumer fraud claims. The $175 per hour rate was sufficient to assure that competent counsel would be available to prosecute plaintiff's claim. We therefore conclude that the "lodestar" figure should be fixed at $10,535, computed at 60.2 hours multiplied by $175 per hour.
As stated, the trial judge erred in dividing the "lodestar" figure by seven, representing the number of counts in plaintiff's complaint. The counts shared a common core of operative facts and were bottomed on related legal theories. Moreover, plaintiff in good faith raised the alternative legal grounds contained in the remaining counts. Our review of counsel's certification satisfies us that much, if not all, of the pretrial time expended by counsel involved the consumer fraud and overlapping claims. Plaintiff also would have been entitled to discovery and jury trial even had she asserted consumer fraud as a single claim. Dismissal of the nonconsumer fraud counts was, accordingly, not a sufficient reason for a wholesale reduction of the fee. Hensley, 461 U.S. at 435, 103 S.Ct. at 1940, 76 L.Ed.2d 52.
We must, however, consider "the amount involved and the results obtained" when devising a reasonable fee award. RPC 1.5(a)(4); Hensley, 461 U.S. at 435, 103 S.Ct. at 1940, 76 L.Ed. at *560 52. The jury rejected plaintiff's claim that she was overcharged $2,000 on the contract price, and awarded her only $350 damages for overpayment of equipment and services. The nominal amount of the damage award alone justifies a substantial downward adjustment in the counsel fee award. Nevertheless, limiting the counsel fee award to the amount of damages recovered, as trebled, would in our view discourage competent counsel from prosecuting consumer fraud cases involving nominal amounts, and would not deter future violators of the Act. Rivera, 477 U.S. at 575, 106 S.Ct. at 2694, 91 L.Ed.2d 480. We therefore conclude, applying the Hensley/Rivera analysis, that a reasonable counsel fee award, considering plaintiff's limited success and other pertinent factors, is $4,500, plus costs. Accordingly, we enter a counsel fee award in favor of plaintiff in the amount of $5,229.23.
We have considered Century's cross-appeal challenging the post-judgment order limiting its counsel fee award to $1,906.87 and are satisfied it is clearly without merit. R. 2:11-3(e)(1)(E).
Reversed on plaintiff's appeal. The award for counsel fees and costs is increased to $5,229.23. Affirmed on Century's cross-appeal.
NOTES
[1] Subsequent opinions of the Court modifying the Hensley analysis concerning upward adjustments of the lodestar figure are not pertinent here since we are concerned with a downward adjustment. See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986); Blum v. Stenson, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984).