687 A.2d 778

MARIE C. INCOLLINGO, ANTHONY E. INCOLLINGO, MICHELLE M. INCOLLINGO, NANCY ANN INCOLLINGO, JOANNE STRAWN, GERALD L. STRAWN, TRACEY A. STRAWN, AND BRANDON M. STRAWN, BY THEIR GUARDIAN AD LITEM JOANNE STRAWN, RUSSELL C. BURTON AND BRETT C. BURTON, BY HIS GUARDIAN AD LITEM, RUSSELL C. BURTON, FRANK CARNOT, RAFFAELA CARNOT, WILLIAM DENNIS, JACQUELINE DENNIS, NICOLE M. DENNIS AND FARRAH D. DENNIS, BY THEIR GUARDIAN AD LITEM, JACQUELINE DENNIS, MICHAEL POWELL, DOROTHY POWELL, AMY POWELL AND MOLLY POWELL, BY THEIR GUARDIAN AD LITEM DOROTHY POWELL, MICHAEL J. VITARELLI, SR., LOIS A. VITARELLI, AND JACQUELINE VITARELLI, LESLIE VITARELLI, MICHAEL VITARELLI, JR., AND ANTHONY VITARELLI, BY THEIR

GUARDIAN AD LITEM LOIS VITARELLI, CHRISTOPHER CONTI, ELAYNE CONTI, DANA MARIE CONTI AND GINA CHRISTINE CONTI, BY THEIR GUARDIAN AD LITEM ELAYNE CONTI, EUGENE E. JARON, ANN T. JARON, KATHLEEN A. JARON, STEPHEN M. JARON, PAUL M. KRAMER, PATRICIA G. KRAMER, DREW KRAMER AND LAUREN KRAMER, BY THEIR GUARDIAN AD LITEM PATRICIA G. KRAMER, SANDY OBLENA, ESTRELLA OBLENA, NATHANIEL OBLENA AND MICHAEL OBLENA, BY THEIR GUARDIAN AD LITEM SANDY OBLENA, WILLIAM HEBLING, ANTHONY CHAPMAN, CATHARINE CHAPMAN, DAVID CHAPMAN AND ADRIANE CHAPMAN BY THEIR GUARDIAN AD LITEM CATHARINE CHAPMAN, JAY AGNES, JACQUELINE AGNES, ROBERT LEWIS, CELINE LEWIS AND STEPHANIE LEWIS, BY HER GUARDIAN AD LITEM ROBERT LEWIS, JUDY BECMER, EDMUND BECMER, ANTHONY ALVAREZ, RITA ALVAREZ, LISA ALVAREZ, DEBRA MURACA, FRANK MURACA, DAVID BARD, RUTH BARD, JOHN M. GAVEN, SR., ANNETTE M. GAVEN, AND JOHN M. GAVEN, JR., YOUNG D. KIM, JULIA S. KIM AND PATRICK KIM AND ROY KIM, BY THEIR GUARDIAN AD LITEM YOUNG KIM, HOWARD FRIEDMAN, DEBRA FRIEDMAN AND MICHELLE FRIEDMAN, BY HER GUARDIAN AD LITEM DEBRA FRIEDMAN, MARIANO A. PINIZZOTTO, ROSEMARY J. PINIZZOTTO, AND MARIE ROSE PINIZZOTTO BY HER GUARDIAN AD LITEM MARIANO A. PINIZZOTTO, CHESTER A. RUDDICK, JR., CARMELITA D. RIDDICK, TODD RIDDICK, AND ALLEN RIDDICK, BY HIS GUARDIAN AD LITEM, CARMELITA D. RIDDICK, ALBERT WILLIAMS, EVELYN WILLIAMS, AND STEPHEN WILLIAMS, MARTIN V. GOLDSTEIN, PATRICIA M. CORSON, FREDERICK E. CHINK, MARIA P. CHINK, MARIO CHINK AND CHRISTINA CHINK, BY THEIR GUARDIAN AD LITEM FREDERICK E. CHINK, RICHARD J. NELSON AND MARY ANN NELSON, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, PLAINTIFFS, v. JOHN B. CANUSO, SR., JOHN B. CANUSO, JR., CANETIC CORPORATION, CANUSO MANAGEMENT CORPORATION, JOCAN, INC., FOX AND LAZO, INC., WEICHERT REALTORS, DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Submitted January 15, 1997—Decided January 28, 1997.

Before Judges SHEBELL, BAIME and PAUL G. LEVY.

Appellants *Mesirov Gelman Jaffe Cramer & Jamieson,* and *Williams & Cuker,* attorneys pro se (*Mark R. Rosen, Mark R. Cuker* and *Debra N. Nathanson,* on the brief).

The opinion of the court was delivered by

PAUL G. LEVY, J.A.D.

Appellants were the attorneys for plaintiffs in *Strawn v. Canuso,* 271 *N.J.Super.* 88, 638 *A.*2d 141 (App.Div.1994), *aff'd,* 140 *N.J.* 43, 657 *A.*2d 420 (1995), a landmark case in which the Court held

that builders and selling brokers of new homes have a duty to disclose to potential buyers the existence of material off-site conditions. After the Court's decision, the defendants in the case, a developer and two brokers, reached separate settlements with plaintiffs. The total value of the settlements exceeded three million dollars. This appeal involves the sufficiency of the attorneys' fees attendant on the settlements.

At the time of settlement, the matter had been certified as a class action and the proposed settlements had to be approved by the court on notice to the members of the class. *R.* 4:32–4; *see Chattin v. Cape May Greene, Inc.,* 216 *N.J.Super.* 618, 626–7, 524 *A.*2d 841 (App.Div.), *certif. denied,* 107 *N.J.* 148, 526 *A.*2d 209 (1987). Each settlement was approved by a judge who certified the class for settlement purposes, directed disposition of the proceeds to members of the class and determined the attorneys' fees. First, Weichert Realtors agreed to pay $200,000 of which approximately $150,000 was paid to counsel to reimburse costs and expenses of litigation; none went to attorneys' fees. Second, Fox and Lazo Realtors agreed to pay $825,000 cash and to issue coupons redeemable for credit of $1500 against real estate commissions payable to Fox and Lazo from any resale of a house by a plaintiff (the face value of the coupons totals $231,000). A judge approved attorneys fees of $275,000 (one-third of the cash settlement) with the balance of the cash, as well as the coupons, to be distributed in equal shares to each family. Finally, the developers (the Canuso defendants) agreed to settle for $1,950,000. Another judge was assigned to review that settlement. That judge dealt with various claims for allocation to the respective members of the class and also considered a separate application for attorneys' fees. Counsel sought a fee of one-third of the cash settlement, as they had before, but the judge awarded only twenty percent. A motion for reconsideration was denied and this appeal ensued. We reverse and exercise our original jurisdiction to order payment of the fee requested.

The action commenced almost ten years ago on May 5, 1987. The original plaintiffs had purchased new homes without being told of the proximity of an unlined landfill containing toxic waste. Eventually the class of plaintiffs included more than 150 families. The litigation was vigorously defended and the discovery exceedingly demanding causing this matter to drag on for many years. Although there were no reported New Jersey appellate decisions directly on point with plaintiff's claims, through perseverance of counsel they prevailed when the action was resolved by settlement. *See Strawn v. Canuso, supra,* 271 *N.J.Super.* at 101, 638 *A.*2d 141. After notice was sent to all possible members of the class, only one person objected to the settlement and the requested attorneys' fees, but that person's claims had already been dismissed on the merits and he was not considered a member of the class. *See id.* at 109–10, 638 *A.*2d 141. Counsel sought a fee of $650,000 representing one-third of the settlement with the Canuso defendants. That request was supported by a petition containing certifications of services that included data on time spent, rates charged and biographical statements of the principal attorneys and paralegal, a comprehensive brief and certifications from two independent practicing attorneys attesting to the significance of the work done by plaintiffs' counsel and the reasonableness of the fee requested.

The fee petition showed that counsel spent 9,811 hours prosecuting the action to that point. Applying their stated hourly rates, which ranged from $300 and $260 per hour for the two principal attorneys to lower rates for other attorneys, law clerks and paralegals, a lodestar of $1,951,671 resulted. However, by requesting a fee of only $650,000, the rates used to calculate the lodestar were effectively reduced to $142 and $123 per hour for what was sought by those two attorneys, and proportionately lower for all other professionals. The judge considering the petition awarded only $390,000 which represents twenty percent of the fund in court; this made the ultimate billing rates for the two lead attorneys $102 and $89, respectively.

The judge stated that he considered *R.P.C.* 1.5(a), which states:

(a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services;

(8) whether the fee is fixed or contingent.

The judge generally acknowledged the skill and competence of the principal attorneys and the novelty and difficulty of the issues. He found *RPC* 1.5(a)(2), (4), (5) and (6) essentially inapplicable. Although he accepted the number of professional hours spent on the case, he found that the regular hourly rates of counsel "substantially far exceeds the rates that I'm cognizant of being charged by competent experienced lawyers and their staff in this locality." Then, referring to *RPC* 1.5(a)(8), he characterized the nature of the fee as a "hybrid" of both fixed and contingent fee structures. He recognized the settlements with the brokers amounted to at least one million dollars, and concentrated on *R.* 1:21–7(c)(4), which permits application to the Assignment Judge for approval of a contingent fee on recoveries exceeding one million dollars. The judge rejected the request for a fee of one-third, stating that "I do not accept the argument that less than a full one third fee would create some economic disincentive for competent counsel to accept representation in a case such as this." Matching his decision against his perception that a "minimum recovery" would range from five to fifteen percent of a recovery exceeding one million dollars, he decided that "a reasonable fee for all the services outlined would be an additional twenty percent fee on the million, nine hundred and fifty thousand."

Counsel moved for reconsideration, and submitted certifications from two additional independent attorneys and from a principal of

a company specializing in economics of law practice. The judge rejected the substance of the certifications and denied relief.

To determine appellants' counsel fees, the judge should have applied the procedure articulated by the Supreme Court in *Rendine v. Pantzer*, 141 *N.J.* 292, 661 *A.*2d 1202 (1995). In a case with a fee-shifting statute, a trial court's first step is to determine the lodestar. *Id.* at 334, 661 *A.*2d 1202. Next, the court may reduce the lodestar fee to exclude unreasonably billed hours or "if the level of success achieved in the litigation is limited as compared to the relief sought." *Id.* at 335–36, 661 *A.*2d 1202.

Then, the trial court should "determine whether the assigned hourly rates for the participating attorneys are reasonable." *Id.* at 337, 661 *A.*2d 1202. Doing so, "the court should assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Ibid.* (citing *Rode v. Dellarciprete*, 892 *F.*2d 1177, 1183 (3d Cir.1990)). Finally, *Rendine* instructs trial courts, after establishing the lodestar fee, to "consider whether to increase that fee to reflect the risk of nonpayment in all cases in which the attorney's compensation entirely or substantially is contingent on a successful outcome." *Id.* at 337, 661 *A.*2d 1202. In addition, the Court states that the lodestar should be "adjusted to reflect the actual risk that the attorney will not receive payment if the suit does not succeed." *Id.* at 338, 661 *A.*2d 1202. Moreover, in a related case decided that same day, the Supreme Court held that "the reasonable counsel fee payable to the prevailing party under fee-shifting statutes is determined independently of the provisions of the fee agreement between that party and his or her counsel." *Szczepanski v. Newcomb Med. Center, Inc.*, 141 *N.J.* 346, 358, 661 *A.*2d 1232 (1995).

▮ In this case, appellants claim the trial judge abused his discretion in calculating their fee. Although the judge did not challenge the number of hours worked by appellants, he did dispute the reasonableness of their hourly fee, a number necessary

to arrive at an accurate lodestar. While the judge indicated that he thought appellants' hourly rates were higher than those charged by others in the locality, he never compared appellants' rates to others he deemed reasonable, a step necessary pursuant to *Rendine, supra,* 141 *N.J.* at 337, 661 *A.*2d 1202.

Here the record indicates that both the actual rates and the effective rates were reasonable. Actual rates were only to be considered to calculate the lodestar. If plaintiffs had not settled but had been successful at trial, it is likely that the defendants would have had to pay at least the lodestar, and possibly a multiple thereof, because plaintiffs succeeded in establishing a new doctrine in the face of the defendants' extreme litigation tactics. *Cf., H.I.P. v. K. Hovnanian,* 291 *N.J.Super.* 144, 161–63, 676 *A.*2d 1166 (Law Div.1996). On the surface, the judge's reliance on his own knowledge and his failure to make adequate findings of fact and conclusions of law suggest a remand for reconsideration. *See S.N. Golden Estates v. Continental,* 293 *N.J.Super.* 395, 408–9, 680 *A.*2d 1114 (App.Div.1996); *Coleman v. Kaye,* 87 *F.*3d 1491, 1510 (3rd Cir.1996). However, the judge reviewing the Canuso settlement had little involvement with the bulk of the litigation; he was assigned at the end of the process and helped the parties reach their final accord. We conclude the record is sufficient for our review and the exercise of our original jurisdiction. The certifications submitted by independent attorneys to the judge specified that the two principal attorneys, who worked almost half of the hours contributed to the project, were well experienced in complex, environmental-tort class actions, that their current billing rates were reasonable and similar to rates charged by other similarly situated attorneys (one certifying attorney charged $310 per hour and referred to rates in similar cases, approved by courts, of $435 to $500 per hour) and that one-third of the Canuso settlement was fair and justified. Another certification established that the effective rates were significantly lower than the average hourly rate charged for attorneys with that level of experience.

■ The attorneys recognized they could not seek their total lodestar from their clients since that would leave nothing for the litigants. They effectively reduced the lodestar by fifty-three percent by seeking total fees of $925,000. The trial judge's further reduction by approximately twenty-eight percent sends two messages that should be discouraged: it discourages competent counsel from accepting difficult, important cases in the future and it encourages excessive litigation tactics by defendants in class actions. The certifications submitted on the original fee petition and on the motion for reconsideration clearly explain the disincentive to counsel to take on difficult litigation when reasonable compensation may be denied by the courts. Although the judge rejected the argument that "a full one third fee" would have that effect, it appears he was concentrating on the policies underlying the contingent fee calculations of R. 1:21-7. His calculation of the eventual fee award was based on a percentage of the recovery over one million dollars, a concept based on R. 1:21-7(c)(5). The contingent fee rule has been clarified by the Administrative Director and it does not apply to a matter such as this.

> The rule does not apply to "business torts" such as fraud or conspiracy to interfere with contractual relationships but includes all typical negligence cases, such as auto accidents, product liability and "slip and fall".
>
> [Pressler, *Current N.J. Court Rules*, comment 11(3) on R. 1:21–7 (1997).]

*Cf.*, *H. Rosenblum, Inc. v. Adler*, 221 *N.J.Super.* 507, 535 *A.*2d 22 (App.Div.1987) (limitation on contingent fee arrangements not extended to accountant malpractice). The record indicates that original "typical negligence" claims were dismissed by plaintiffs on June 10, 1988 and were not a consideration at the time of settlement.

The record is sufficiently complete to permit us to make a *Rendine* analysis in the exercise of our original jurisdiction. *R.* 2:10–5. *See Silva v. Autos of Amboy, Inc.*, 267 *N.J.Super.* 546, 558–59, 632 *A.*2d 291 (App.Div.1993); *African Council v. Hadge*, 255 *N.J.Super.* 4, 13, 604 *A.*2d 604 (App.Div.1992); *Anastasio v. Planning Bd. of Tp. of West Orange*, 209 *N.J.Super.* 499, 518, 507 *A.*2d 1194 (App.Div.), *certif. denied*, 107 *N.J.* 46, 526 *A.*2d 136

(1986). The lead attorneys did almost half the work over the span of this case. Each has an outstanding background including honors status at law school, judicial clerkships, extensive trial experience in complex litigation with a specialization in environmental tort matters, and publication of legal materials for periodicals and professional seminars. The number of hours spent by counsel is reasonable given the complexity of the litigation and the extreme motion and discovery practice engendered by defendants, causing the matter to stretch out for almost ten years. The billing rates used to calculate the lodestar are fair and reasonable for such work by such counsel, and the reduced lodestar actually sought is clearly billed below market rates. *Cf.*, *H.I.P. v. K. Hovnanian, supra,* 291 *N.J.Super.* at 160, 676 *A.*2d 1166 ($200 per hour); *Gallo v. Salesian Society, Inc.,* 290 *N.J.Super.* 616, 660, 676 *A.*2d 580 (App.Div.1996) ($200 per hour); *Silva v. Autos of Amboy, Inc., supra,* 267 *N.J.Super.* at 559, 632 *A.*2d 291 ($175 per hour). Finally, while an adjustment to the lodestar might be warranted by the relationship of the recovery to the lodestar ($3,006,000 / $1,951,671), counsel have voluntarily halved the lodestar making any adjustment unnecessary.

We conclude, therefore, that *R.* 1:21–7 is inapplicable to this matter, and pursuant to *Rendine* and *R.* 2:10–5, the fee award of $390,000 on the Canuso settlement proceeds is reversed and an award of $650,000 is granted. We remand for entry of an appropriate order with provision for service of the order on the members of the class and all other parties.