876 A.2d 806 (2005)
378 N.J. Super. 539
COURIER NEWS, Plaintiff-Respondent/Cross-Respondent,
v.
HUNTERDON COUNTY PROSECUTOR'S OFFICE, Defendant/Third-Party Plaintiff-Respondent/Cross-Appellant,
v.
State of New Jersey, Third-Party Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued March 8, 2005.
Decided June 28, 2005.
*807 Larry R. Etzweiler, Senior Deputy Attorney General, argued the cause for third-party defendant-appellant State of New Jersey (Peter C. Harvey, Attorney General, attorney; Patrick DeAlmeida, Assistant Attorney General, and Mr. Etzweiler, of counsel; Kenneth B. Goodman, Deputy Attorney General, on the brief).
Gaetano M. De Sapio, Hunterdon County Counsel, argued the cause for respondent/cross-appellant.
John C. Connell argued the cause for respondent/ cross-respondent Courier News (Archer & Greiner, attorneys; Mr. Connell, William L. Ryan, and Mark G. Toscano, on the brief).
McGimpsey & Cafferty, attorneys for amicus curiae New Jersey Press Association (Arlene M. Turinchak and Thomas J. Cafferty, on the brief).
Before Judges LEFELT, FUENTES and FALCONE.
The opinion of the court was delivered by
FUENTES, J.A.D.
The State of New Jersey appeals from an award of counsel fees in favor of plaintiff, Courier News, pursuant to the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13. In Courier News v. Hunterdon County Prosecutor's Office, 358 N.J.Super. 373, 817 A.2d 1017 (App.Div. 2003) (Courier I), we determined that a tape recording of an emergency 9-1-1 call, in the custody of the Hunterdon County Prosecutor's Office (HCPO) in connection with a then-active criminal prosecution, was subject to public disclosure under OPRA.
As the prevailing requestor in Courier I, plaintiff moved before us for an award of counsel fees pursuant to N.J.S.A. 47:1A-6. Given the novelty of the question, we remanded the matter to the designated OPRA judge of the vicinage for "the development of an ample record on all relevant factors." We suggested the trial judge "invite the joinder of the State, if the County contends that the State should be responsible, in whole or in part, for counsel fees." The County so contended, leading the court to grant its application to join the State as a third-party defendant.
*808 Relying, in part, on the holding in Wright v. State, 169 N.J. 422, 778 A.2d 443 (2001), the vicinage OPRA judge ruled that the State was responsible for plaintiff's counsel fee award, because the HCPO had been performing a state law enforcement function when it denied plaintiff access to the tape. The State appeals from that determination. Both the State and the HCPO also appeal from the amount awarded.
After reviewing the applicable law, we reverse. We hold that as the custodian of the government record at issue here, the HCPO is responsible under OPRA to pay plaintiff's counsel fees. N.J.S.A. 47:1A-6. We decline to extend the holding in Wright, to convert what, in our view, is a clear County financial obligation under N.J.S.A. 2A:158-7, into a State expense.
Plaintiff's request under OPRA was directed to the HCPO in its administrative capacity as the custodian of the 9-1-1 tape. The fact that the tape was also evidence in a criminal prosecution does not in any way alter HCPO's custodial role under OPRA. Holding the County financially responsible for this expense also promotes the sound management of public resources.

I

The Underlying Action
Before we begin our analysis of the legal issues, we will briefly describe the events that have led us to this point.
On February 14, 2002, an emergency 9-1-1 telephone call was placed from the home of former professional basketball player Jayson Williams in Alexandria Township, in connection with the death of Costas Christofi. Courier I, supra, 358 N.J.Super. at 376, 817 A.2d 1017. Law enforcement authorities investigating the death concluded that it was a homicide, and seized the tape recording of the 9-1-1 call as evidence in their criminal investigation. Ibid. A grand jury subsequently indicted Williams on various criminal charges including aggravated manslaughter. Ibid.
Because of his high profile status, the criminal case against Williams generated a great deal of media attention. On July 8, 2002, a reporter for plaintiff formally requested a copy of the 9-1-1 tape from the HCPO. Ibid. On July 10, 2002, the HCPO denied the request on the grounds that release of the tape would: (1) jeopardize the continuing investigation and prosecution of the pending case of State v. Williams; and (2) impair defendant's right to a fair trial. Courier I, supra, 358 N.J.Super. at 376, 817 A.2d 1017.
By letter dated October 22, 2002, plaintiff again requested a copy of the tape and set forth its legal arguments in support of access. The HCPO again denied the request. Id. at 377, 817 A.2d 1017. On December 18, 2002, plaintiff filed an action in lieu of prerogative writs under N.J.S.A. 47:1A-6, seeking access to the tape as a government record under OPRA. Plaintiff's complaint also included a demand for an award of reasonable counsel fees. The Law Division denied plaintiff's request. We granted plaintiff's motion for leave to appeal, and summarily reversed.
We held that under the facts presented: (1) the 9-1-1 tape was a "government record," pursuant to N.J.S.A. 47:1A-1.1; (2) there was no basis to apply the confidentiality provisions in N.J.S.A. 47:1A-3, because the tape did not pertain to "an investigation in progress;" (3) the fact that media coverage might make jury selection more difficult was not a basis to deny access under OPRA; and (4) HCPO was unable to offer any specific evidence that there would be juror confusion because of the prosecution's plan to introduce into evidence at trial an electronically enhanced *809 version of the tape. Courier I, supra, 358 N.J.Super. at 380-83, 817 A.2d 1017. We ordered the HCPO to immediately provide plaintiff with a copy of the sound recording of the 9-1-1 telephone call. Id. at 383, 817 A.2d 1017.

II

Proceedings Before the Vicinage OPRA Judge
Immediately after our decision in its favor, plaintiff moved before us seeking an award of counsel fees in the amount of $21,572.63, based on the 101.30 hours of work performed by attorney John C. Connell. This amount included out-of-pocket disbursements of $2,142.13, and reflected an accommodation credit to the client of $1,500. Connell's hourly rate of compensation was $250. The HCPO disputed the reasonableness of the fees, and raised the question of whether the State should be the responsible party.
On May 1, 2003, we entered an order remanding the matter to the designated OPRA judge for the vicinage, to consider the fee request in all aspects, both trial and appellate levels. We directed the trial judge to invite joinder of the State and, in view of the novelty of the matter as to counsel fees, to develop "an ample record on all relevant factors."
After rejecting a number of irrelevant arguments raised by the HCPO under the federal Freedom of Information Act, 5 U.S.C.A. § 552(a)(4)(E), the Law Division considered a supplemental certification of services submitted by plaintiff's counsel. This certification was supported by detailed billing records for the period from April 3, 2003 to June 30, 2003, and sought a total award of costs and fees in the amount of $41,386.79.
The State and the HCPO both moved for summary judgment on the question of liability. The OPRA judge issued a letter opinion finding in favor of the HCPO. The judge framed the question to be decided thusly:
When a request is made to the Prosecutor for a public record pursuant to the Open Public Records Act ("OPRA") and when that record is in the Prosecutor's possession as evidence in a pending criminal trial, which public entity is responsible for counsel fees under OPRA for wrongful denial of that documentthe State or the County?[1]
In answering the question in favor of the HCPO, the judge relied on the holding in Wright v. State, supra. Although he recognized that the holding in Wright "is not controlling, and the case at bar is indeed a case of first impression," the judge, nevertheless, concluded that, because the HCPO's decision to deny plaintiff's OPRA request constituted the performance of a law enforcement function, the State was legally obligated to assume the financial responsibility for the award of counsel fees.
The court made the following findings: (1) the amount of time spent by plaintiff's counsel "was reasonable and necessary to the proper handling of this case at all stages;" (2) Connell's $250 hourly rate was reasonable and customary; (3) the litigation involved issues of first impression; and (4) plaintiff's actions and ultimate outcome at the appellate level made a significant contribution to the body of decisional law in the area of the public's right to *810 know, and the press's right to governmental information.
The court also noted the novelty of the fee award and "the hard-fought arguments" of the HCPO both at the appellate and trial levels. Armed with these findings, the judge awarded plaintiff its full fee of $55,773.84. In so doing, the court rejected the argument that such an amount was excessive and reemphasized the "important public policy issues that were at stake."

III

Legal Analysis
The Law Division's reliance on Wright v. State is misplaced. Writing for the majority of the Court, Justice Stein framed the issue confronting the court in Wright as follows:
This is an interlocutory appeal arising from a civil action for false arrest, invasion of privacy, malicious prosecution, false imprisonment, and other causes of action against several defendants including thirteen employees of the Somerset County Prosecutor's Office (SCPO). We must determine whether pursuant to the relevant provisions of the Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 12-3, the State of New Jersey is vicariously liable for the actions of the SCPO's employees and whether the State is required to indemnify and defend them. The trial court held that the State was neither vicariously liable for the SCPO's employees' conduct nor required to defend and indemnify them. The Appellate Division denied appellants' motions for interlocutory review.
We reverse. We hold that the State may be held vicariously liable for the tortious conduct of the SCPO's prosecutors and investigative subordinates during the investigation, arrest and prosecution of Isaac Wright and that the State may be required to indemnify and defend those prosecutors and subordinates in respect of the claims alleged by Wright in this litigation.
[Wright, supra, 169 N.J. at 429-30, 778 A.2d 443 (emphasis added).]
The focus of the Court's analysis in Wright was the interplay between the "tortious" conduct of employees of county prosecutors, and the principles of vicarious liability embodied in discrete sections of the Torts Claims Act. In short, Wright has nothing to do with the question before us, to wit, who should be responsible for the payment of counsel fees awarded to a prevailing requestor under OPRA?
To answer this question, we must look to the provisions of OPRA. N.J.S.A. 47:1A-6 provides, in pertinent part, that "[a] person who is denied access to a government record by the custodian of the record ... may: institute a proceeding to challenge the custodian's decision by filing an action in Superior Court []. A requestor who prevails in any proceeding shall be entitled to a reasonable attorney's fee." (Emphasis added).
Here, it is undisputed that the HCPO was the custodian of the 9-1-1 tape. The HCPO assumed administrative responsibility to safeguard this audio record the minute it took custody of it. The fact that the HCPO assumed this custodial role in connection with a then-active criminal investigation is of no moment. Its liability to plaintiff, in the form of counsel fees, flows exclusively from the provisions of OPRA (N.J.S.A. 47:1A-6), not from its constitutional status as a law enforcement agency.
Another significant difference between OPRA and Wright involves determining who is liable. In Wright, the Supreme Court was concerned with liability flowing *811 from the tortious acts of individuals employed by the county prosecutor. Wright, supra, 169 N.J. at 429-30, 778 A.2d 443. By contrast, the fee-shifting provision in OPRA imposes liability upon the "public agency," as an entity, not individual agency employees. N.J.S.A. 47:1A-6.
Individuals, such as public officials, officers, employees or custodians, are only personally liable if they "knowingly and willfully" violate the provisions of OPRA, and are "found to have unreasonably denied access [to government records] under the totality of the circumstances." N.J.S.A. 47:1A-11a. This form of personal liability is limited to a civil penalty ranging from $1,000 to $5,000. Ibid. It does not, in any way, involve the payment of counsel fees to a prevailing requestor.
In adopting OPRA, the Legislature declared that it is the public policy of this State to provide its citizens with the right to access government records. N.J.S.A. 47:1A-1. The fee-shifting provisions in OPRA are a vital means of fulfilling this promise. Without these provisions, the ordinary citizen would be waging a quixotic battle against a public entity vested with almost inexhaustible resources. By making the custodian of the government record responsible for the payment of counsel fees to a prevailing requestor, the Legislature intended to even the fight.
Here, the fact that the battle was waged by a newspaper, rather than an ordinary citizen, is unrelated to the greater principle at stake. Our republic has been, and continues to be, honorably served by newspapers engaged in investigative journalism, bringing to the light of public scrutiny what government, without a legitimate public-interest reason, wants to keep hidden. The Legislature came to a similar conclusion when it provided for an award of counsel fees to a prevailing requestor, regardless of whether such a request comes from an individual citizen or from a media conglomerate.
N.J.S.A. 2A:158-7 provides that:
All necessary expenses incurred by the prosecutor for each county in the detection, arrest, indictment and conviction of offenders against the laws shall, upon being certified to by the prosecutor and approved, under his hand, by a judge of the superior court, be paid by the county treasurer whenever the same shall be approved by the board of chosen freeholders of such county. The amount or amounts to be expended shall not exceed the amount fixed by the board of chosen freeholders in its regular or emergency appropriation, unless such expenditure is specifically authorized by order of the assignment judge of the superior court for such county.
Under the facts presented here, the payment of counsel fees to a successful requestor under OPRA is a "necessary expense," incurred by the HCPO. We discern no legal basis to shift this financial burden to the State.

IV

Amount of the Award
Finally, we turn our attention to the State's arguments with respect to the excessiveness of the award. We agree with the trial court's assessment of the complexity of the issues at stake. Plaintiff is also entitled to be compensated for the time spent by counsel in preparing a counsel fee petition. Tanksley v. Cook, 360 N.J.Super. 63, 67, 821 A.2d 524 (App.Div.2003); H.I.P. (Heightened Independence & Progress, Inc.) v. K. Hovnanian at Mahwah VI, Inc., 291 N.J.Super. 144, 163, 676 A.2d 1166 (Law Div.1996); Robb v. Ridgewood Bd. of Educ., 269 N.J.Super. 394, 411, 635 A.2d 586 (Ch.Div.1993); Council *812 Enterps., Inc. v. Atlantic City, 200 N.J.Super. 431, 443, 491 A.2d 789 (Law Div.1984).
A review of the record, however, reveals that the amounts claimed in counsel's affidavits were overstated by $2,500. At oral argument before us, plaintiff conceded this error, and the amount of the award should be adjusted accordingly. Furthermore, in plaintiff's counsel's first affidavit, he sought $21,572.63. In his first supplemental affidavit, he sought an additional $9,578.47. In the second supplemental affidavit, he sought an additional $7,735.69. However, in that second supplemental affidavit, counsel claimed that the total amount sought as of that date was $41,386.79, whereas the three figures add up only to $38,886.79.
When the third supplemental affidavit was filed, seeking an additional $14,387.05, the trial court inadvertently added the requested amount to the erroneous $41,386.79 figure. Thus, we agree with the State that the most to which plaintiff is entitled is $38,886.79.

V

Conclusion
The judgment of the trial court imposing liability upon the State for counsel fees awarded under OPRA is reversed. As the custodian of the government records, the HCPO is the responsible public agency for the payment of counsel fees to the prevailing requestor.
Reversed and remanded to adjust the award of counsel fees consistent with this opinion.
NOTES
[1] The vicinage OPRA judge also held that the HCPO gave proper notice to the State of the pendency of plaintiff's action. We need not discuss this issue in light of our conclusion that the State is not liable under OPRA.