883 A.2d 329

NEW JERSEYANS FOR A DEATH PENALTY MORATORIUM, PLAINTIFF–RESPONDENT, v. NEW JERSEY DEPARTMENT OF CORRECTIONS, AN AGENCY OF THE STATE OF NEW JERSEY AND DEVON BROWN, IN HIS OFFICIAL CAPACITY AS THE COMMISSIONER OF THE NEW JERSEY DEPARTMENT OF CORRECTIONS, DEFENDANTS–APPELLANTS.

Argued February 28, 2005—Decided August 15, 2005.

138

*Lewis A. Scheindlin*, Assistant Attorney General, argued the cause for appellants (*Peter C. Harvey*, Attorney General of New Jersey, attorney; *Patrick DeAlmeida* and *Michael J. Haas*, Assistant Attorneys General, of counsel).

*Kevin D. Walsh*, argued the cause for respondent.

*Thomas J. Cafferty* and *Arlen M. Turinchak*, submitted a brief on behalf of amicus curiae New Jersey Press Association (*McGimpsey & Cafferty*, attorneys).

*Neil M. Mullin*, submitted a brief on behalf of amici curiae American Civil Liberties Union of New Jersey, Constitutional Litigation Clinic, Rutgers School of Law–Newark, New Jersey Appleseed Public Interest Law Center and New Jersey Institute for Social Justice (*Smith Mullin*, attorneys).

Justice ZAZZALI delivered the opinion of the Court.

This appeal requires us to address once again the standards that govern an award of attorney's fees under a state fee-shifting statute. In this matter, the New Jerseyans for a Death Penalty Moratorium (NJDPM)[1] sued the New Jersey Department of Corrections (DOC) to challenge the DOC's promulgation of rules and procedures for carrying out capital sentences by lethal injection. In connection with its challenge, the NJDPM requested that the DOC turn over various records. Although it provided some of the records, the DOC claimed that a majority of the requested documents contained privileged information that should not be disclosed.

---

[1] In its brief before this Court, the NJDPM notes that the association "recently changed its name to New Jerseyans for Alternatives to the Death Penalty," but the "entity is otherwise the same." For the sake of consistency with the Appellate Division decision and the parties' briefs, the group's former name, NJDPM, will be used throughout this opinion.

The NJDPM sought complete access to the records under the Open Public Records Act (OPRA), *N.J.S.A.* 47:1A–1 to –13. Before the trial court could rule on the NJDPM's claim, the DOC voluntarily released a portion of the records to the NJDPM. The court, however, ordered the DOC to provide all or part of numerous other documents. Claiming that the NJDPM was the prevailing party, the NJDPM's counsel applied for reasonable attorney's fees under the fee-shifting provision of the OPRA, *N.J.S.A.* 47:1A–6. Finding that the NJDPM had prevailed, the trial court awarded 70% of the lodestar amount because the NJDPM gained access to only 70% of the requested records. The court also determined that the NJDPM's counsel was entitled to a 5% fee enhancement.

The Appellate Division reversed, eliminating the 30% fee reduction after finding that the NJDPM's counsel "achieved a full measure of success." *New Jerseyans for a Death Penalty Moratorium v. N.J. Dep't of Corr.*, 370 *N.J.Super.* 11, 18, 850 *A.*2d 530 (2004). The panel also increased the fee enhancement from 5% to 25%, noting that the NJDPM's counsel faced a high risk of nonpayment because he represented the organization on a *pro bono* basis. *Id.* at 17, 850 *A.*2d 530.

For the reasons set forth below, we agree with the Appellate Division's holding that the attorney should receive 100% of the lodestar. Although we also conclude that the lodestar should be enhanced, we remand this issue to the trial court for a recalculation that is consistent with the guidelines set forth in our opinion.

I.

Because an understanding of the attorney's efforts, the various computations of attorney's fees, the contentions of the parties, and the reasoning of the courts below are indispensable to a determination of the questions presented, we set forth the factual and procedural history of this matter in detail.

Founded in 1999, the NJDPM is a 10,000 member "unincorporated grassroots association" that attempts to effect change in New Jersey's use of the death penalty through legislative, execu-

tive, and legal action. Attorney Kevin D. Walsh has served as the NJDPM's legal counsel and Chairperson of its Legal Committee since 2001. The NJDPM considers itself to have an attorney-client relationship with Walsh, but he performs his services strictly on a *pro bono* basis. Walsh is also a salaried, full-time employee of Fair Share Housing Center (FSHC) in Cherry Hill. Although he was permitted to use FSHC resources in his representation of the NJDPM, Walsh did his work for the NJDPM on his own time. The record indicates that Walsh tended to the NJDPM's legal affairs "on the weekends ... [and] after work normally from six or seven o'clock until whenever the [work was] done."

In 2001, the NJDPM requested that the DOC produce numerous records related to New Jersey's lethal injection process. The NJDPM planned to use the documents both in a rulemaking challenge against the DOC and in the NJDPM's day-to-day activities. The DOC provided the NJDPM with several documents, some of which were redacted, but withheld the rest under the deliberative process privilege. *See In re Liquidation of Integrity Ins. Co.*, 165 *N.J.* 75, 83, 754 *A.*2d 1177 (2000) ("The deliberative process privilege is a doctrine that permits the government to withhold documents that reflect advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated."). In all, the DOC denied the NJDPM access to seventy-nine documents totaling about 394 pages.

In 2002, the NJDPM filed a complaint in lieu of prerogative writs in the Law Division, seeking unrestricted access to the withheld and redacted documents under both the New Jersey Right-to-Know Law, *N.J.S.A.* 47:1A–1 to –4, which has since been incorporated into the OPRA, and the common law right to know. The NJDPM alleged that a number of the documents that the DOC withheld or redacted were unprivileged public records because they were compiled in connection with the DOC's readoption of *N.J.A.C.* 10A:23, the regulation that was the subject of the

NJDPM's rulemaking challenge. *See In re Readoption with Amendments of Death Penalty Regulations N.J.A.C. 10A:23,* 367 *N.J.Super.* 61, 65–66, 842 *A.*2d 207 (App.Div.), *certif. denied,* 182 *N.J.* 149, 862 *A.*2d 57 (2004). One day prior to filing the OPRA complaint in the Law Division, the NJDPM, as part of its rule-making challenge before the Appellate Division, moved to review the information that the DOC claimed was privileged. The Appellate Division remanded the NJDPM's motion to the Law Division for an *in camera* hearing regarding the DOC's claims of privilege. Because the Law Division determined that the same documents were in dispute in both the OPRA action and the motion made in the rulemaking challenge, the court consolidated the matters.

Later in 2002, the Law Division found the DOC's blanket assertion of privilege to be unsound and ordered the complete disclosure of forty-seven pages of documents and the redacted disclosure of another 142 pages. Based on this outcome, the NJDPM authorized Walsh to pursue the attorney's fees that are the subject of this appeal. Accordingly, Walsh requested that the trial court award him payment for 89.5 hours of work on the OPRA privilege issues, including the time spent researching the OPRA, preparing descriptions of the requested documents, identifying ways to overcome the DOC's assertion of privilege, and drafting the initial fee application. Based on certifications from five attorneys litigating OPRA cases, Walsh argued that his reasonable hourly rate as a third-year attorney was $155, bringing the lodestar to $13,872.50. Furthermore, given the novelty of the OPRA, the DOC's substantial resources, the high risk of nonpayment inherent in his *pro bono* arrangement with the NJDPM, and the public value of the litigation, Walsh asked the court to enhance the lodestar by 30%. Finally, Walsh sought payment for an additional 70.3 hours spent on work related to his supplemental fee application, which included researching and drafting a brief that addressed various OPRA fee issues raised by the trial court. Therefore, including court costs, Walsh requested a total attorney's fee award of $29,135.75.

Although the trial court found that the NJDPM was the prevailing party because it "achieved an 'excellent result'" by gaining "access to a significant number of government records," the court awarded Walsh only $8,351.57 in fees and costs. In awarding that lesser amount, the court first reduced the 89.5 hours spent by Walsh on the OPRA privilege issues to 56.1 hours, including five hours for the initial fee application. Based on Walsh's certifications as to how his time was allotted, the court reasoned that the excluded hours "appear[ed] to be redundant, excessive or otherwise unnecessary." For similar reasons, the court reduced the time Walsh spent on the supplemental fee application from 70.3 hours to ten hours. However, the court was satisfied that an hourly rate of $155 was reasonable for an attorney of Walsh's skill and experience.

Next, the trial court reduced the amount awarded for litigating the privilege issues by 30% because the NJDPM gained access to only 70% of the records it sought.[2] Although the court emphasized the need to assess both the quantity and quality of the documents obtained, the court's opinion simply compared the number of documents and pages the NJDPM sought with the number that the DOC was ordered to release. The court concluded that a fee reduction was appropriate even though it found that the DOC's "reasons ... for non-disclosure were generalized conclusions without ... specific information on a document by document basis" and "there were a number of documents that ... were clearly documents that [the DOC] should have ... disclosed because they were" not protected by any recognized privilege.

---

[2] In its opinion, the trial court stated that its independent review of the record confirmed the accuracy of the NJDPM's assertion that the organization recovered 70% of the documents it sought in the OPRA litigation. Actually, the NJDPM calculated that it obtained relief with respect to 60 out of 75 documents (80%) or, applying a page-by-page analysis, to 59% percent of the requested pages. The average of 80% and 59% is 69.5%, or approximately 70%. Therefore, we assume that the trial court averaged the percentages presented by the NJDPM.

Finally, the trial court concluded that a minimal fee enhancement of 5% was appropriate in this case after finding that both the NJDPM and Walsh were able to successfully mitigate the risks inherent in the OPRA litigation. Specifically, the court determined that the NJDPM, by maintaining its own legal committee, was not in the position of having to attract competent counsel with the lure of a statutory fee award. The court further determined that Walsh, as Chair of the NJDPM's Legal Committee, required no outside motivation to represent the NJDPM in its attempt to access the records. Importantly, the court declined to apply the enhancement or reduction to the fifteen hours it allowed for the fee applications.

In summary, the court calculated that Walsh was entitled to a payment of $7,920.50 for the non-fee-related work done on the OPRA issues (51.1 hours multiplied by $155 per hour), subject to a 30% reduction of $2,376.15 for a net total of $5,544.35. That amount was then subjected to a 5% enhancement of $277.22 for a total of $5,821.57. Additionally, the court awarded $775 for the five hours it allowed for the initial fee application, and $1,550 for the ten hours it allowed for the supplemental fee work. Therefore, including $205 for court costs, the trial court awarded Walsh attorney's fees totaling $8,351.57.

The DOC appealed the trial court's enhancement of the fee award, and the NJDPM cross-appealed on the court's reduction of the lodestar for partial success and the time spent on the supplemental fee work. The Appellate Division vacated the trial court's order and remanded for a recalculation of attorney's fees in accordance with the panel's decision. *NJDPM, supra,* 370 *N.J.Super.* at 21, 850 *A.2d* 530. First, after noting that fee enhancements should reflect both the contingent nature of the attorney's services and the legal risks inherent in the litigation, the Appellate Division increased the trial court's enhancement from 5% to 25%. *Id.* at 16–17, 850 *A.2d* 530. The panel concluded that a greater enhancement was appropriate because Walsh faced nonpayment unless he achieved a successful outcome and he

assumed a considerable risk of failure given the DOC's blanket claim of privilege. *Ibid.*

The panel also eliminated the trial court's 30% fee reduction, reasoning that Walsh "achieved a full measure of success and [should] be fully compensated" for "advance[ing] the statutory goals of OPRA." *Id.* at 18, 850 *A.*2d 530. The panel noted that the lower court's reduction analysis was unduly quantitative because it focused on the mere number of records Walsh did not obtain and failed to consider that Walsh was "forced to spread a wider net than might be required had there not been an unsupportable claim of privilege." *Id.* at 17–18, 850 *A.*2d 530.

The Appellate Division then examined the trial court's reduction of the hours Walsh spent on the supplemental fee application. *Id.* at 18–21, 850 *A.*2d 530. After noting that the trial court had requested an in-depth analysis of various fee issues arising in OPRA cases, the panel exercised its original jurisdiction and determined that 50 hours was a reasonable time for Walsh to have spent responding to the court's request.[3] *Id.* at 20–21, 850 *A.*2d 530. Finally, the panel noted that Walsh's request for $155 per hour was rather modest, but that he was nevertheless bound by his request. *Id.* at 21, 850 *A.*2d 530.

We granted the DOC's petition for certification. 182 *N.J.* 628, 868 *A.*2d 1031 (2005). We also granted amicus curiae status to the New Jersey Press Association, the American Civil Liberties Union of New Jersey, the Constitutional Litigation Clinic of Rutgers School of Law–Newark, the New Jersey Appleseed Public Interest Law Center, and the New Jersey Institute for Social Justice.

## II.

The DOC argues that the Appellate Division committed reversible error by eliminating the trial court's 30% reduction of the

---

[3] Neither the NJDPM nor the DOC contest the Appellate Division's award of fifty hours for the time Walsh spent on the supplemental fee application.

lodestar for the NJDPM's partial recovery of the records sought. The DOC contends that the panel's opinion "disregard[s] the settled law governing fee-shifting statutes" by taking the position "that a requester who files a complaint seeking a substantial number of documents, but successfully obtains only a handful of them, must receive the full amount of attorney fees." Furthermore, the DOC suggests that this Court, in determining whether to impose a fee reduction, should solely "rely on the percentage of documents ordered released, out of the total number originally sought in the complaint, as the surest indicator of the degree of success achieved" by the NJDPM.

The DOC also argues that enhancement is not warranted because this matter "does not present the type of economic risks associated" with other fee-shifting cases. Specifically, the DOC maintains that "enhancement is inappropriate because [the NJDPM] does not satisfy the threshold requirement that its counsel must undertake the case on a contingent basis" given that Walsh represented the NJDPM *"without expectation of any compensation."* The DOC further maintains that, since this matter was "filed as an adjunct to an already-pending action, . . . there is no reason to enhance the attorney fee award" because "OPRA litigation . . . should not serve as a windfall for the attorney." Finally, the DOC contends that fee enhancements should generally "not apply to OPRA matters because of the minimal risk to plaintiffs entailed in filing OPRA" complaints.

In opposition, the NJDPM urges us to affirm the Appellate Division's elimination of the fee reduction. The NJDPM also urges this Court to "reject the DOC's request for a mathematical, purely quantitative approach to measuring success," reasoning that such an analysis "provides little aid in determining what is a reasonable fee in light of all the relevant factors." (Internal quotation marks omitted.) Instead, the NJDPM advocates a qualitative approach that takes into account that the NJDPM "achieved an 'excellent result' in proving that the DOC fundamentally and improperly failed to comply with OPRA," forcing the

DOC to turn over "hundreds of pages of plainly factual public records."

The NJDPM next argues that the panel's 25% fee enhancement was reasonable because the organization "could only obtain equitable relief, and could not measure the likelihood of success because of the DOC's failure to provide sufficient information regarding the documents it withheld." The NJDPM also disputes the DOC's characterization of the OPRA litigation as "adjunct" to the rulemaking challenge, asserting instead that the NDJPM's "interest in the documents it sought went far beyond" that appeal. Finally, the NJDPM contends that, contrary to the DOC's argument, a fee enhancement was proper in this case notwithstanding the *pro bono* agreement between the NJDPM and Walsh.

As amicus curiae, the New Jersey Press Association (Press Association) reiterates the NJDPM's argument that, when considering the fee reduction, this Court should adopt a qualitative approach that accounts for the purpose of the OPRA and whether the NJDPM's ultimate recovery furthered that purpose. The Press Association emphasizes that "success cannot be measured as pages obtained in comparison to pages sought" because "success under OPRA can be obtaining that one 'smoking gun' record hidden amongst hundreds of pages or ... it may be the absence of any records."

Next, the Press Association refutes the DOC's assertion that fee enhancements are not appropriate in OPRA matters. The Press Association contends that OPRA cases are suitable for enhancement because requesters are often confronted with significant legal risks that could potentially impede their likelihood of success. Stated differently, because requesters do not "have access to the documents and must rely upon the very limited information supplied by the custodian in making a determination as to whether to bring a court action, there often are significant legal risks to the likelihood of success which constitute an economic disincentive."

Jointly, the remaining amici restate the NJDPM's argument that the *pro bono* status of counsel is immaterial to determining

whether a fee enhancement should be awarded in this matter. Furthermore, they argue that "there is no evidence in the record that the NJDPM's counsel worked 'without expectation of any compensation.'" Conversely, they maintain that "non-profit advocacy organizations like the *amici* and NJDPM fully expect and need—in order to support operations and incentivize volunteer counsel—... to be awarded [statutory] fees and costs." Finally, the amici note, contrary to the DOC's argument, that compensation for Walsh's services was absolutely contingent on a successful outcome in the OPRA litigation.

### III.

### A.

■ "'[F]ee determinations by trial courts will be disturbed only on the rarest of occasions,'" *Packard–Bamberger & Co. v. Collier,* 167 *N.J.* 427, 444, 771 *A.*2d 1194 (2001) (quoting *Rendine v. Pantzer,* 141 *N.J.* 292, 317, 661 *A.*2d 1202 (1995)), because a "trial court [is] in the best position to weigh the equities and arguments of the parties," *id.* at 447, 771 *A.*2d 1194. However, because an award of reasonable attorney's fees under OPRA is a matter of first impression, the trial court was without standards to guide its discretion. We do not adopt the court's reduction of the lodestar, and, instead, we award the entire lodestar amount.

■ Under the "American Rule, adhered to by the ... courts of this state, the prevailing litigant is ordinarily not entitled to collect a reasonable attorney's fee from the loser." *Rendine, supra,* 141 *N.J.* at 322, 661 *A.*2d 1202 (internal quotation marks omitted). However, this principle is not without exceptions. From matters involving consumer fraud, *N.J.S.A.* 56:8–19, to instances of discriminatory treatment, *N.J.S.A.* 10:5–27.1, the New Jersey Legislature has promulgated a "substantial number of statutes authorizing an award of a reasonable counsel fee to the attorney for the prevailing party." *Rendine, supra,* 141 *N.J.* at 322, 661 *A.*2d 1202. Although the underlying purpose of those

statutes may vary, they share a common rationale for incorporating a fee-shifting measure: to ensure "that plaintiffs with bona fide claims are able to find lawyers to represent them[,] ... to attract competent counsel in cases involving statutory rights, ... and to ensure justice for all citizens." *Coleman v. Fiore Bros.,* 113 *N.J.* 594, 598, 552 *A.*2d 141 (1989).

Under the OPRA, it is the declared public policy of this State that "government records shall be readily accessible for inspection, copying, or examination by the citizens of this State." *N.J.S.A.* 47:1A–1. To obtain records that are not made available, "[a] person who is denied access to a government record by the custodian of the record ... may ... institute a proceeding to challenge the custodian's decision by filing an action in Superior Court." *N.J.S.A.* 47:1A–6. If the court determines that the custodian unjustifiably denied access to the record in question, he or she is entitled to a "reasonable attorney's fee." *Ibid.* Without that fee-shifting provision, "the ordinary citizen would be waging a quixotic battle against a public entity vested with almost inexhaustible resources. By making the custodian of the government record responsible for the payment of counsel fees to a prevailing requestor, the Legislature intended to even the fight." *Courier News v. Hunterdon County Prosecutor's Office,* 378 *N.J.Super.* 539, 546, 876 *A.*2d 806 (App.Div.2005).

 As we have recognized, "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," a calculation known as the lodestar. *Rendine, supra,* 141 *N.J.* at 324, 661 *A.*2d 1202 (quoting *Hensley v. Eckerhart,* 461 *U.S.* 424, 433, 103 *S.Ct.* 1933, 1939, 76 *L.Ed.*2d 40, 50 (1983)). However, simply employing the lodestar to determine a reasonable fee award can be problematic "[i]f ... a plaintiff has achieved only partial or limited success [because] the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Szczepanski v. Newcomb Med. Ctr.,* 141 *N.J.* 346, 355, 661 *A.*2d 1232 (1995)

(internal quotation marks omitted). Accordingly, we have author-ized courts to "reduce the lodestar fee if the level of success achieved in the litigation is limited as compared to the relief sought." *Rendine, supra,* 141 *N.J.* at 336, 661 *A.*2d 1202. Stated differently, if a prevailing party has obtained "limited relief in comparison to all of the relief sought, the [trial] court must determine whether the expenditure of counsel's time on the entire litigation was reasonable in relation to the actual relief obtained ... and, if not, reduce the award proportionately." *N. Bergen Rex Transp., Inc. v. Trailer Leasing Co.,* 158 *N.J.* 561, 572, 730 *A.*2d 843 (1999) (internal quotation marks omitted) (alterations in original).

However, we have "not establish[ed] a *per se* require-ment that there be a close relationship between recovery and fees awarded for services rendered." *Id.* at 574, 730 *A.*2d 843. We reject " 'a mathematical approach comparing the total number of issues in the case with those actually prevailed upon' because '[s]uch a ratio provides little aid in determining what is a reason-able fee in light of all the relevant factors.' " *Silva v. Autos of Amboy, Inc.,* 267 *N.J.Super.* 546, 555–56, 632 *A.*2d 291 (App.Div. 1993) (quoting *Hensley, supra,* 461 *U.S.* at 435 n. 11, 103 *S.Ct.* at 1940 n. 11, 76 *L.Ed.*2d at 52 n. 11) (alteration in original). Stated differently, "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Hensley, supra,* 461 *U.S.* at 435, 103 *S.Ct.* at 1940, 76 *L. Ed.*2d at 52. Because "the critical factor is the degree of success obtained," *Silva, supra,* 267 *N.J.Super.* at 556, 632 *A.*2d 291, "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee," *Hensley, supra,* 461 *U.S.* at 435, 103 *S.Ct.* at 1940, 76 *L.Ed.*2d at 52.

We also reject the DOC's argument that this Court should simply rely on percentages of documents obtained to determine whether a reduction of the lodestar is appropriate in OPRA cases. Rather, we conclude that when a "portion of a claim sought is ultimately rejected, that circumstance should be consid-

ered along with other factors ... to determine a reasonable award of attorneys' fees." *Bergen Rex, supra,* 158 *N.J.* at 574, 730 *A.*2d 843. The trial court should conduct a qualitative analysis that weighs such factors as the number of documents received versus the number of documents requested, and whether the purpose of the OPRA was vindicated by the litigation. Further, as we stated in *Bergen Rex,* the court also should consider the factors enumerated in *RPC* 1.5(a), which include the novelty of the issue, the time and labor required to conclude the matter, and whether the representation precluded the attorney from undertaking other employment opportunities. *Id.* at 574, 730 *A.*2d 843. If, after consideration of all the relevant factors, the court concludes that the requester has obtained a high degree of success, the requester should recover the full lodestar amount. And as the Press Association argues, success under the OPRA—even a high degree of success—might be acquiring "that one 'smoking gun' record hidden amongst hundreds of pages or ... it may be the absence of any records."

## B.

As the Appellate Division stated, although the trial court "indicated the need to view the results in a qualitative rather than a quantitative sense, [it] appears to have relied on a quantitative analysis." *NJDPM, supra,* 370 *N.J.Super.* at 18, 850 *A.*2d 530. The trial court simply awarded the NJDPM's counsel a percentage of the lodestar that mirrored the number of documents obtained. There are circumstances present in this case, however, that warrant awarding the entire lodestar amount. For example, as the panel stated, because of the DOC's "unsupportable claim of privilege," the NJDPM was "forced to spread a wider net than might be required" by other parties who attempt to vindicate their rights under OPRA. *Id.* at 17, 850 *A.*2d 530. Similarly, the trial court itself noted that the DOC resisted disclosure with "generalized" claims of privilege that lacked "specific information on a document by document basis" and that the DOC should have

recognized that many of the undisclosed documents were clearly not privileged. Because of the DOC's position, and the relative novelty of the OPRA, Walsh "was forced to play a sort of blind-man's [bluff] in the pursuit of [the NJDPM's] rights." *Id.* at 16, 850 *A.*2d 530. Further, he labored on behalf of NJDPM on the weekends and after normal business hours at his full-time job, imposing additional limitations upon his advocacy on behalf of his client. Considering those circumstances, and the hundreds of pages of documents ultimately obtained from the DOC, we conclude that Walsh achieved a high degree of success and should be compensated accordingly. Therefore, we affirm the panel's elimination of the trial court's 30% fee reduction and order the Law Division, on remand, to award Walsh 100% of the lodestar.

IV.

A.

We now address whether enhancement of the attorney's fee is appropriate in this appeal. The DOC opposes enhancement, maintaining that the NJDPM's counsel did not perform the OPRA litigation on a contingent basis, the threshold requirement for enhancement. *See Rendine, supra,* 141 *N.J.* at 339, 661 *A.*2d 1202. Although Walsh neither expected nor received payment from the NJDPM, he performed his services contingent upon being fully compensated for his time under the fee-shifting provision of the OPRA if he prevailed. The fact that Walsh did not expect payment from the NJDPM has no bearing on whether his fee award should be enhanced because "the reasonable counsel fee ... under fee-shifting statutes is determined independently of the provisions of the fee agreement between [the] party and his or her counsel. The statutory fee award may be comparable to or substantially different from the amount payable under a negotiated fee agreement." *Szczepanski, supra,* 141 *N.J.* at 358, 661 *A.*2d 1232.

■ The DOC further challenges use of a fee enhancement in this matter by claiming that enhancements are never appropriate in OPRA cases. We disagree. OPRA is a fee-shifting statute, and as we have held, "a counsel fee awarded under a fee-shifting statute cannot be 'reasonable' unless the lodestar, calculated as if the attorney's compensation were guaranteed irrespective of result, is adjusted to reflect the actual risk that the attorney will not receive payment if the suit does not succeed." *Rendine, supra,* 141 *N.J.* at 338, 661 *A.*2d 1202. When a prevailing party has faced a substantial risk of nonpayment in its attempt to secure the release of a government record, enhancement may be appropriate, subject to the following qualification.

■ Like all fee-shifting statutes, the OPRA neither prohibits enhancements, nor does the Act require them. Because enhancements are not preordained, trial courts should not enhance fee awards as a matter of course. Every case will depend upon its facts. Ordinarily, the facts of an OPRA case will not warrant enhancement of the lodestar because the economic risk in securing access to a particular government record will be minimal. For example, in a "garden variety" OPRA matter, if a person's request for a traffic or tax record is denied, resulting in an action that forces the custodian to promptly produce the record, enhancement will likely be inappropriate.

■ However, unusual circumstances occasionally may justify an upward adjustment of the lodestar. The facts of this matter provide the basis for such a departure. Here, the attorney did not receive a fee from his client; the risk of failure was high because the DOC asserted a blanket claim of privilege; and the documents sought related to an issue of signal public importance, capital punishment by lethal injection. Further, as both the trial court and the Appellate Division have acknowledged, the attorney achieved an excellent result in this case of first impression, and, we add, he did so with exemplary competence and commitment. Although those factors are illustrative only, we conclude that,

under the totality of the circumstances, this is an unusual OPRA matter that warrants enhancement.

## B.

■ For the above reasons, we agree with both the trial court and the Appellate Division that enhancement is appropriate in this appeal. The only remaining question is the amount of that adjustment. We note that Walsh requested 30%, the trial court awarded 5%, and the Appellate Division increased the enhancement to 25%. The enhancement "ordinarily should range between five and fifty-percent of the lodestar fee, with the enhancement in typical contingency cases ranging between twenty and thirty-five percent of the lodestar." *Id.* at 343, 661 *A.*2d 1202. Because we repose discretion in the trial court to establish the enhancement, those percentages are guidelines only.

We remand this matter to the Law Division to determine the amount of the enhancement. The court should consider, as described above, the public importance of the matter, the degree of success achieved, the high risk—indeed the fact—of non-payment, and any other factors that support the attorney's request for an enhancement. The court also should consider any arguments presented by the DOC in opposition to enhancement. Because we have identified the relevant factors above, *see supra* pp. 147–48, 883 *A.*2d at 335, we need not repeat them.

The *Rendine* requirements and standards for enhancement, *id.* at 339, 661 *A.*2d 1202, remain extant subject to our qualification that enhancements are not a matter of right in OPRA cases.

## V.

As modified by the guidance that we have provided, the Appellate Division's opinion is affirmed. We remand this matter to the Law Division for an award of the full lodestar fee and an enhancement that is in accordance with our opinion.

Justice LaVECCHIA, concurring and dissenting in part.

Although I concur in the determination of the Court to award counsel for NJDPM one hundred percent of his lodestar, I cannot agree that a percentage enhancement of counsel's fee (already determined to be a reasonable hourly rate of reimbursement) is appropriate under the Open Public Records Act (OPRA), *N.J.S.A.* 47:1A–1 to –13.

The majority emphasizes that fee enhancement is not to be an expected award and that it is not "preordained" for a successful OPRA litigant. *Ante* at 157, 883 *A.2d* at 340. However, in my view, the majority's judgment is not sufficiently discriminating in its evaluation of the appropriateness of fee enhancement in this OPRA litigation. I believe that the majority intends to discourage the award of enhanced fees for OPRA plaintiffs; however, it misapplies its own rule in *this* appeal. The use of an enhancement to a fee award under OPRA ought to be rare and compellingly justified. This OPRA appeal does not afford such justification.

The Department of Corrections correctly argues that this case did not pose an economic contingency risk to counsel and his client that was remotely close to that which led to approval of enhancement of the fee paid under the fee-shifting provision of the New Jersey Law Against Discrimination, *N.J.S.A.* 10:5–27.1, in *Rendine v. Pantzer*, 141 *N.J.* 292, 661 *A.2d* 1202 (1995). *Rendine* involved a traditional contingency fee case. That, however, is not what we have here.

Here, a public interest attorney employed full time by the Fair Share Housing Center (FSHC) took on the instant litigation on behalf of NJDPM, a *pro bono* organization in which he has served for years in a leadership capacity and as its *pro bono* legal counsel. Although it is admirable that counsel worked beyond his normal workweek on this matter, it did not create a compelling economic risk for counsel or his *pro bono* client. Throughout, counsel remained employed full time. The risk that he might not have all or any of his time on this case reimbursed under an OPRA fee-shifting application does not equate to the degree of risk posed to

an attorney retained on a contingency basis to pursue a difficult LAD action. The risk here was no different than the typical litigation risk posed under fee-shifting situations permitted under our Court Rules or pursuant to contract. The shifted fee, to be paid by the losing party, is ·a reimbursement of the attorney's *reasonable* fees. There is no enhanced "bonus" amount added to the attorney's fee. Similarly, in my view, there should be no sweetening of the reimbursed fees paid to cover the counsel expenses incurred by a successful OPRA litigant.

That said, although I have severe misgivings that enhancement should ever be allowed in an OPRA fee-shift award, I would leave open for the time being the question whether there might arise a sufficiently compelling circumstance to justify enhancement of an attorney's fee under a reasonableness assessment. If in some extraordinary setting a fee enhancement under OPRA might be compellingly justified—and I am hard pressed to speculate on when such a circumstance could arise—a court should exercise restraint and keep any enhancement to a minimum. By necessity, an OPRA fee award can *only* be paid from public funds. That fact should be counterbalanced against any determination to enhance an already reasonable attorney's rate and should serve as strong incentive to keep the enhancement of fees in OPRA litigation rare, and the amount of any enhancement, should it ever be justified, small. Finally, I would add, because the majority opinion does not provide the trial courts with guidance on how to approach OPRA fee applications when the OPRA litigation is being used as an adjunct to other litigation, that the courts should be vigilant to prevent OPRA litigation, with its concomitant allowance of a reasonable fee award, from being manipulated into a mechanism to shift the costs of discovery from one party to another.

In sum, I respectfully dissent from the award of an enhancement of counsel's hourly fee rate that already has been determined to be reasonable in amount. I concur fully in the determination to award NJDPM counsel one hundred percent of his lodestar in view of his substantial success in this matter.

Justice RIVERA–SOTO joins in this opinion.

*For affirmance as modified/remandment*—Chief Justice PORITZ and Justices LONG, ZAZZALI, ALBIN, and WALLACE—5.

*Concurring in part/dissenting in part*—Justices LaVECCHIA and RIVERA–SOTO—2.