NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1980-19

JHC INDUSTRIAL
SERVICES, LLC,

    Plaintiff-Appellant,

v.

CENTURION COMPANIES,
INC., and BONDEX
INSURANCE COMPANY,

    Defendants-Respondents.

_____

| |
|---|
| **APPROVED FOR PUBLICATION** |
| **September 17, 2021** |
| **APPELLATE DIVISION** |

Argued January 27, 2021 - Decided September 17, 2021

Before Judges Ostrer, Accurso, and Enright.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-7635-17.

Autumn N. McCourt argued the cause for appellant (Brach Eichler, LLC, attorneys; Anthony M. Rainone, of counsel and on the briefs; Autumn M. McCourt, on the briefs).

Harold P. Cook, III, argued the cause for respondent.

The opinion of the court was delivered by

ACCURSO, J.A.D.

Defendant Centurion Companies, Inc. subcontracted demolition work it agreed to perform for Alfred Sanzari Construction, Inc. to plaintiff JHC Industrial Services, Inc. JHC did the work and Sanzari paid Centurion for it. Centurion, however, did not pay JHC in full, prompting this action under N.J.S.A. 2A:30A-1 to -2, the legislation designed to ensure the prompt payment of subcontractors and known as the Prompt Payment Act. Although JHC completely prevailed in this two-year, contested case, the trial judge refused its application for $104,670.51 in "reasonable costs and attorney fees" pursuant to N.J.S.A. 2A:30A-2(f), instead awarding it $12,250.40 in fees and $4,125.33 in costs for a total award of $16,375.73, reasoning it could not "[u]nder Rendine [v. Pantzer, 141 N.J. 292, 334-35 (1995)], . . . grant over $100,000 in fees on a judgment that could not have exceeded $30,500."

We reverse. The Prompt Payment Act is a fee-shifting statute that makes an award of "reasonable costs and attorney fees" mandatory to a prevailing party. N.J.S.A. 2A:30A-2(f). Our Supreme Court has expressly "decline[d] to construe New Jersey's fee-shifting statutes to require proportionality between damages recovered and counsel-fee awards even if the litigation . . . vindicates no rights other than those of the plaintiff." Szczepanski v. Newcomb Med. Ctr., 141 N.J. 346, 366 (1995). As the clear purpose of the Prompt Payment Act is to ensure that subcontractors are fully

A-1980-19

and promptly paid for their work, a mandatory award of reasonable costs and attorney fees is necessary to vindicate the Act's salutary purposes. Because the trial court erred in imposing a proportionality requirement where none exists, we vacate the fee award and remand for the trial court to award plaintiff reasonable costs and attorney fees under the relevant Rendine factors.

The facts essential to deciding this appeal concern only Centurion's unwillingness to pay plaintiff for the demolition work it fully performed and its efforts to drag out the litigation plaintiff was forced to file to recover what was due. Plaintiff prevailed on its partial summary judgment motion establishing Centurion owed it $30,500, a judgment Centurion has not appealed. Thus, we dispense with any discussion of the facts giving rise to plaintiff's claim and focus on the effort it took plaintiff to secure its final judgment.

Following timely completion of JHC's work in June 2017, it was owed $30,500 by Centurion. When Centurion failed to pay, JHC threatened to lien the job. Glen Poppe, Centurion's project manager[1] testified at deposition and confirmed at trial that he told JHC "right up front if you put a lien on the job, I'm going to bond it, and I'm not going to pay you." Poppe made good on his threat.

---

[1] Poppe also testified his son Christopher "owns" the Centurion companies.

After plaintiff sued Centurion and the owner to foreclose the lien JHC filed notwithstanding Poppe's threat, it was advised by the owner's counsel that Centurion had secured a bond for release of the lien months before, requiring plaintiff to discharge its lis pendens against the property and file an amended complaint substituting the bonding company for the owner. Centurion then failed to answer, necessitating plaintiff to enter default against it. The parties entered a consent order to vacate default, and Centurion filed a motion to dismiss the action and compel arbitration. Plaintiff was forced to oppose the motion, which after protracted motion practice and oral argument was denied in a written opinion finding no agreement to arbitrate.

After its motion to compel arbitration was denied, Centurion filed an answer and counterclaimed for breach of contract, intentional interference with contract, breach of the implied covenant of good faith and fair dealing and overstatement of a construction lien. The court thereafter ordered the parties to mediation, and they agreed on a mediator. A week before the scheduled date, however, Centurion balked at the mediator's fees and refused to participate, necessitating a motion to the court to compel its participation.[2] Plaintiff won that motion, too.

---

[2] Included in that motion was a request to compel Centurion to answer the interrogatories and document demands it had previously ignored. While the

A-1980-19

Centurion thereafter missed a court-ordered deadline to supply complete discovery, forcing yet another motion by plaintiff. After Centurion served amended discovery responses, plaintiff withdrew its motion. Keeping to the same pattern, Centurion refused to confirm deposition dates of its principals, forcing plaintiff to file yet another motion, this time to extend discovery to permit those depositions to go forward. After Centurion finally committed to dates for depositions, plaintiff also withdrew that motion.

After close of discovery, plaintiff filed a motion for partial summary judgment on its breach of contract and Prompt Payment Act claims. Centurion cross-moved for summary judgment dismissing the Prompt Payment Act claim. Following oral argument, the court entered summary judgment for plaintiff on its contract claim, finding "it is undisputed that JHC completed its work on the contract in full." The court denied both parties' motions on the Prompt Payment Act claim based on Centurion's assertion that plaintiff's delays in completing its work delayed the job and caused Centurion to incur additional costs and damages. Plaintiff's motion for reconsideration was denied.

---

motion prompted Centurion to finally provide some discovery, the answers were inadequate. The court ordered Centurion to provide complete responses within thirty days.

A-1980-19

Accordingly, Centurion forced plaintiff to trial on its Prompt Payment Act claim and on Centurion's counterclaims for breach of contract, intentional interference with contract, breach of the implied covenant of good faith and fair dealing and overstatement of a construction lien. Then, less than a week before the scheduled trial date, when it was reasonable to conclude plaintiff's counsel had already begun to prepare for trial, Centurion sought and received a thirty-day adjournment.

The case was finally tried without a jury by a different judge, who had not heard any of the pre-trial motions. The trial began with defendant dismissing all of its counterclaims. After hearing two days of testimony, the court awarded judgment to plaintiff on its Prompt Payment Act claim.

The court found that notwithstanding plaintiff had fully and promptly performed, Centurion never paid plaintiff the remaining $30,500 due, forcing plaintiff to file its lien. The court found the money "still hasn't been paid, even though it's over two years outstanding." The court further found Centurion produced "no evidence that there was a problem with the work done, or the job, or that there was a dispute." In sum, "[t]here was no problem with this job. The job was done. . . . [T]here's just non-payment."

The court directed plaintiff to file a certification of services, although noting "[t]his matter was not that complicated," and that it was "not sure how

much the legal fees could be[,] based on . . . non-payment of a bill." Nevertheless, the court stated it would render its decision based on the lodestar factors that are applicable.

Upon receipt of plaintiff's counsel's detailed certification of services in accordance with Rule 4:42-9(b) and RPC 1.5(a), however, the judge did not discuss the applicable lodestar factors. Instead, after identifying the Rendine factors, it found only that the case "was a basic contract recovery case," which "did not require any special knowledge or [involve] novel questions." Noting "there were only five motions filed by the plaintiff,"[3] the majority of which "were non-dispositive discovery motions," the court emphasized that "[t]he amount involved was only $30,500." Although allowing that "[p]laintiff's counsel returned a satisfactory result for the client," the court declared it "unreasonable to spend triple the amount on litigation costs than it is possible to obtain from the judgment," and that it could not "[u]nder Rendine . . . grant over $100,000 in fees on a judgment that could not have exceeded $30,500."

Although fee determinations are discretionary decisions by trial courts we only rarely disturb, Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 444 (2001), this one, which was based on a clear error of law, cannot stand, see

---

[3] Plaintiff filed six motions in the trial court and responded to two filed by Centurion.

Matter of Commitment of W.W., 245 N.J. 438, 448 (2021) (noting questions of statutory interpretation are reviewed de novo). As our Supreme Court explained in Rendine, "our Legislature has passed a substantial number of statutes authorizing an award of a reasonable counsel fee to the attorney for the prevailing party." 141 N.J. 292, 322 (1995). "Although the underlying purpose of those statutes may vary, they share a common rationale for incorporating a fee-shifting measure: to ensure 'that plaintiffs with bona fide claims are able to find lawyers to represent them[,] . . . to attract competent counsel in cases involving statutory rights, . . . and to ensure justice for all citizens.'" New Jerseyans for a Death Penalty Moratorium v. N.J. Dep't of Corr., 185 N.J. 137, 152-53 (2005) (quoting Coleman v. Fiore Bros., 113 N.J. 594, 598 (1989)).

The law is well settled that "[a] reasonable attorney's fee may exceed the value of the recovery by the plaintiff" in a statutory fee-shifting case. Balducci v. Cige, 240 N.J. 574, 599 (2020). The Court over twenty years ago expressly "decline[d] to construe New Jersey's fee-shifting statutes to require proportionality between damages recovered and counsel-fee awards even if the litigation . . . vindicates no rights other than those of the plaintiff." Szczepanski, 141 N.J. at 366. In statutory fee-shifting cases "in which the fee requested is disproportionate to the damages recovered," the court has

A-1980-19

instructed trial judges to "evaluate not only the damages prospectively recoverable and actually recovered, but also the interest to be vindicated in the context of the statutory objectives." Ibid.

As the Court has noted in the context of a Consumer Fraud Act matter, "[t]he Legislature undoubtedly was aware that in consumer fraud cases involving minor losses, attorneys' fees frequently would exceed the damages suffered. Nevertheless, the Legislature intended plaintiffs to have access to the court system to pursue relatively small claims against deceptive retailers." Furst v. Einstein Moomjy, Inc., 182 N.J. 1, 24 (2004). The Court observed "[i]n that respect, the provision for attorneys' fees is one of the deterrent aspects of the legislation, and therefore, fraudulent retailers should beware." Ibid.

Because we presume "the Legislature . . . to be aware of judicial construction of its enactments," N.J. Democratic Party, Inc. v. Samson, 175 N.J. 178, 195 n.6 (2002), we can safely assume the Legislature was well aware of the Court's long-standing interpretation of the State's fee-shifting statutes as not including a proportionality requirement when it amended the Prompt Payment Act in 2006 to add the attorney's fee provision. See Senate Budget and Appropriations Comm., NJ S. Comm. State. to S.B. 1726 (1R) 212th Legislature (June 30, 2006) (noting "[t]he bill, as amended, provides

procedures and remedies for prime contractors, subcontractors and subsubcontractors who are not paid in a timely way in connection with a public or private construction contract," including "that actions brought to collect payments pursuant to the bill be conducted inside of this State and that the prevailing party be awarded reasonable costs and attorney fees"). As the entire thrust of the statute is to ensure that contractors and subcontractors receive full payment for their work promptly on completion, it is patently clear the Legislature intended the attorney's fee provision as "one of the deterrent aspects of the legislation."[4] See Furst, 182 N.J. at 24.

Thus, we conclude the court erred in reading a proportionality requirement into the attorney's fee provision of the statute and in deciding it could not grant plaintiff's fee request for $104,670.51 expended to recover the $30,500 Centurion refused to pay plaintiff after if fully performed. As the Court noted in Furst, statutory fee-shifting provisions are intended both to punish and deter the conduct the statute interdicts, here failure to promptly pay a subcontractor the full amount owed; let the non-paying owner or contractor beware. See 182 N.J. at 12 (noting the Consumer Fraud Act's equitable and

---

[4] The other is the provision included in the original 1991 enactment that "the delinquent party shall be liable for the amount of money owed under the contract, plus interest at a rate equal to the prime rate plus 1%." N.J.S.A. 2A:30A-2(c).

legal remedies, "treble damages, reasonable attorneys fees, and costs of suit," are "not only to make whole the victim's loss, but also to punish the wrongdoer and to deter others from engaging in similar fraudulent practices").

The statute's salutary goals of ensuring that contractors and subcontractors are fully and promptly paid for their work are thwarted when such plaintiffs fully prevail on a suit to vindicate their rights under the Act but net little or nothing owing to the costs of the litigation. See Coleman, 113 N.J. at 597 (explaining a statutory fee-shifting provision provides those protected by the statute not only the right to go to court to enforce the law but also the resources to do so). Without the court's unstinting enforcement of the statutory fee-shifting provision, contractors and subcontractors with relatively small claims would win only a Pyrrhic victory against defendants who failed to discharge their statutory obligations to pay promptly what they owe. Cf. Jacobs v. Mark Lindsay & Son Plumbing & Heating, Inc., 458 N.J. Super. 194, 211-12 (App. Div. 2019) (noting "the salutary purpose of the [statute] is undercut if the professional work performed by competent private counsel in the course of representing consumers victimized by [unlawful] practices is arbitrarily undervalued by the judges entrusted to enforce the [Consumer Fraud Act's] fee-shifting provision").

Instead of deterring owners and contractors from delaying payment or stiffing their subs as the Legislature intended, it would be the stiffed contractors and subcontractors who would be deterred from suing to vindicate their statutory rights. Courts are simply not free to ignore the clear intent of the Legislature by failing to enforce a plainly written statutory provision such as the one at issue here, by imposing a limitation not found in the text. See DiProspero v. Penn, 183 N.J. 477, 492 (2005) (instructing that courts should not "write in an additional qualification which the Legislature pointedly omitted in drafting its own enactment") (quoting Craster v. Bd. of Comm'rs, 9 N.J. 225, 230 (1952)).

We accordingly remand to the trial court to reconsider the mandatory fee award due plaintiff in accordance with Rendine. The first step, of course, will be "to determine the 'lodestar': the number of hours reasonably expended multiplied by a reasonable hourly rate," encompassing the first two Rendine factors. 141 N.J. at 334-35. While the trial court did not comment on the hourly rates of counsel, we note the hourly rate of the senior partner on plaintiff's side, $400 to $475 for the years in which the suit was pending in the trial court, was commensurate with what defense counsel claims was his own customary rate of $450 for the same time period, leading one to suspect

plaintiff's counsel's rates were reasonable in accord with the prevailing market rates in the community.[5] See id. at 337.

Because the third and fourth Rendine factors, which require adjusting the lodestar for the plaintiff's degree of success and consideration of any entitlement to a contingent fee enhancement, id. at 336-38, are not implicated here, the single most important task for the trial judge on remand will be to determine "the number of hours reasonably expended," id. at 336, in obtaining complete success for plaintiff on its Prompt Payment Act claim following trial. Although the court has an "obligation to exclude from the lodestar calculation hours not reasonably expended," it may not arbitrarily reduce plaintiff's fees because it considers them disproportionate to the sum owed plaintiff on the contract. Szczepanski, 141 N.J. at 354.

Instead, in determining the number of hours reasonably expended in this suit under the circumstances, the court must consider "the interests to be vindicated, and the underlying statutory objectives" of the Prompt Payment Act, see Rendine, 141 N.J. at 336, as well as the extent to which Centurion's discovery posture "caused any excess expenses to be incurred," Szczepanski,

---

[5] On remand, however, the court is to follow the directive in Rendine that "the hourly rate at which compensation is to be awarded should be based on current rates rather than those in effect when the services were performed," in order to account for the delay in payment. 141 N.J. at 337.

141 N.J. at 366. As we have already discussed the importance of a mandatory fee award to the interests to be vindicated and the Legislature's objectives in enacting the Prompt Payment Act, we focus here on Centurion's litigation posture in running up the fees.

When Glen Poppe testified at his deposition that he told JHC "right up front if you put a lien on the job, I'm going to bond it, and I'm not going to pay you," plaintiff's counsel followed up by asking why Centurion refused to pay JHC, notwithstanding that Sanzari had paid Centurion for the work. Poppe responded, "Because I told him not to lien the job." When plaintiff's counsel pressed, asking "now that you've been paid, why not pay [JHC]," Poppe replied, "It's just not going to happen until someone tells me I have to pay him. That's all I can tell you."

From our perspective, that comment epitomized Centurion's litigation posture in this matter. After not bothering to advise plaintiff it had secured a bond in response to its lien, thereby forcing plaintiff to file amended pleadings, Centurion first tried to dismiss plaintiff's complaint and compel it to go to arbitration, although the court found there had been no agreement to arbitrate. Centurion then filed counterclaims on which plaintiff took discovery, only to have Centurion dismiss all of those claims on the first day of trial. Centurion ignored plaintiff's discovery requests, forcing plaintiff to engage in repeated

A-1980-19

motion practice to obtain answers to interrogatories and document requests and to schedule the deposition of its principals.

Centurion took no discovery itself. And it backed out of mediation after having agreed on a mediator, necessitating yet another motion on plaintiff's part to compel compliance with a clear order of the court. Then Centurion opposed plaintiff's motion for summary judgment, raising defenses to plaintiff's Prompt Payment Act claim it had no ability to prove at trial according to the trial judge. Centurion took these steps notwithstanding repeated warnings from plaintiff's counsel that this was a fee-shifting case.

Centurion should certainly not be forced to pay for "prolix or repetitious legal maneuvering," Szczepanski, 141 N.J. at 366, but neither should it be allowed to evade responsibility for running up plaintiff's fees by its own legal maneuvering and obdurate approach to the litigation, forcing plaintiff to trial on claims to which Centurion had no defense. On remand, the trial court must consider all of these facts in assessing "what legal services reasonably competent counsel would consider as required to vindicate" plaintiff's rights under the Prompt Payment Act, see ibid., mindful that plaintiff's counsel obtained not merely a "satisfactory result for the client," but complete success on all of plaintiff's claims after two years of litigation and trial in this matter.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

15

A-1980-19